464 P.2d 353

Dr. Jack J. HERMAN, Appellant,

v.

Aurora P. VIGIL, Appellee.

No. I CA–CIV 1058.

Court of Appeals of Arizona.

Division 1.

Jan. 28, 1970.

Rehearing Denied Feb. 27, 1970.

Review Denied March 31, 1970.

Anderson & Holloway, by Jack M. Anderson, Paul W. Holloway, Phoenix, for appellant.

O'Reilly, Pollock, Pizzo & Brash, by Gerald A. Pollock, Phoenix, for appellee.

JACOBSON, Judge.

The question of whether or not a witness's "emotional instability" affects her credibility, is raised in this appeal from the Superior Court of Maricopa County.

In April, 1962, plaintiff-appellee, AURORA P. VIGIL, commenced an action against defendant-appellant, DR. JACK J. HERMAN, alleging that due to defendant's failure to properly examine, diagnose and treat plaintiff, a tubercular condition from which she suffered was permitted to reach an advanced stage. This is the second appeal in this case. In the first, the Arizona Supreme Court reversed the judgment of the trial court granting defendant's motion for directed verdict and remanded the matter to the trial court for a new trial. Vigil v. Herman, 102 Ariz. 31, 424 P.2d 159 (1967).

Upon the second trial, the jury returned a verdict in favor of plaintiff and against the defendant for the sum of $25,000.00. Defendant appeals from that verdict and judgment.

The only question raised by defendant in this appeal is the propriety of the court's ruling excluding testimony of Dr. Edward D. Waldman as to the emotional instability of the plaintiff.

The factual background of this case has been adequately set out in the prior Supreme Court decision, Vigil v. Herman, supra, and need not be repeated here. The factual basis giving rise to defendant's claim of error by the trial court is as follows.

Dr. Edward B. Waldman was called by the defendant near the close of defendant's case. Dr. Waldman, an expert in internal medicine, had examined the plaintiff prior to the first trial at the request of the defendant and upon stipulation of the parties. From Dr. Waldman's recitation of his qualifications preparatory to laying foundation for his expertise, it is apparent that he is eminently qualified in internal medicine. It also appears that he had a brief residency in psychiatry early in his medical career and spent some time in the armed services in 1951 where he dealt with psychiatry. Following his discharge from the armed services, Dr. Waldman's entire training and career has been primarily in internal medicine.

Dr. Waldman was allowed to testify in narrative fashion as to his rather extensive examination of plaintiff, and was allowed to recite a rather complete history given to him by the plaintiff including side-

lights as to plaintiff's crying during the examination.

After this evidence had been given by the doctor he reached a point where he was about to testify as to his conclusions, this testimony again being in narrative form. Plaintiff's counsel, being aware of the doctor's next statement by reason of his testimony in the prior trial, objected to any further testimony of the doctor and requested arguments outside the hearing of the jury. This request was granted. Outside the hearing of the jury, plaintiff's counsel indicated to the court that the doctor was about to testify as to the emotional instability of the plaintiff and requested the court to exclude this type of testimony, in essence, a motion *in limine*. After hearing arguments of both counsel on the question the court granted plaintiff's motion. Thereupon defendant's counsel made the following offer of proof:

"I would like to state that if the witness was permitted to respond to the question in full, the testimony of the witness would be that in his opinion the plaintiff presented definite clinical symptoms representing rather deep seated emotional instability, and that the duration of this instability had continued for several years, probably through the time that she was seen professionally by Dr. Herman."

Dr. Waldman was allowed to testify that in his opinion many of plaintiff's symptoms were based on anxiety.

■ A good portion of both plaintiff's and defendant's briefs are devoted to arguments concerning Dr. Waldman's qualifications, the opportunity of the doctor to formulate his opinion and the discretion of the trial court in excluding or allowing expert testimony. The rule in Arizona, of long standing, is that the competency of an expert is for the sound discretion of the trial judge. Harris v. Campbell, 2 Ariz.App. 351, 409 P.2d 67 (1965); Gray v. Woods, 84 Ariz. 87, 324 P.2d 220 (1958); City of Phoenix v. Brown, 88 Ariz. 60, 352 P.2d 754 (1960).

Professor Wigmore in his treatise on evidence would go even further and opts for the rule that "the trial court must be left to determine, absolutely and without review, the fact of possession of the required qualification by a particular witness." 2 Wigmore on Evidence sec. 561, at 641 (3d ed. 1940).

However, we need not determine the extent of the trial court's discretion here as to the competency of the expert for there appears to us to be a more fundamental basis for the trial court's ruling excluding Dr. Waldman's testimony, that is, the lack of probative value of the doctor's testimony to any material issue in dispute.

In this regard, the defendant contends that the key factual issue in this case turns upon the credibility of the plaintiff and that evidence of her emotional instability bears upon this material issue. In support of this position, defendant has cited to the court several cases for the proposition that where a witness is suffering from insanity or a mental abnormality which affects his memory, such a fact can be properly brought to the jury's attention on the issue of his credibility. Illustrative of these cases is Alleman v. Stepp, 52 Iowa 626, 3 N.W. 636 (1879), which held:

"Surely, if defendant was suffering from an *impaired mind, which affected his memory,* the fact would tend to lessen the credit to be given to his testimony. Can it be doubted that the credibility of a witness may be assailed by showing his *want of mental capacity?* It is said that the infirmity of memory should be shown by cross-examination. But it might not be made to appear in that way, though it really existed. The witness was a physician, and knew the defendant before and after the injury, and *the condition of his mind as to memory.* He was surely competent to state the fact of defendant's loss of memory, and, in our judgment, he was competent to state his opinion of the defendant's mental condition, based upon his knowledge

 

and observation of the defendant before and after the injury. If, in this way, it should be made to appear that *defendant's memory was impaired by disease, his credibility would be impeached."* (Emphasis added.) 3 N.W. at 637.

Courts have also allowed, as bearing on the issue of credibility, testimony that a witness was an imbecile, or had a lack of understanding, or was of moronic comprehension, State v. Armstrong, 232 N.C. 727, 62 S.E.2d 50 (1950); or that the witness had defects of memory caused by disease of the mind, McCormick, Law of Evidence sec. 45 (1954).

In this case, however, there is no showing in the offer of proof that the plaintiff's "emotional instability" in fact affected her memory, understanding or comprehension. This defect in the offer of proof would, by itself, be sufficient to sustain the trial court's ruling of exclusion. State v. Smythe, 148 Wash. 65, 268 P. 133 (1928).

There is no evidence in the record that plaintiff was suffering from an impairment or disease of the mind which affected memory or that she was an imbecile or a moron, or had a lack of mental ability which would affect her comprehension or understanding. While the record is replete with testimony from both the defendant and his witnesses that plaintiff cried on the slightest provocation and was nervous and tense on numerous occasions, and even though the testimony of the plaintiff herself exudes the image of a highly nervous and sensitive person, there is nothing from the record to indicate that plaintiff did not fully comprehend, understand and recall in vivid detail her experiences with the defendant. In short, there was no evidence from which the jury could properly make the causal connection between emotional instability and credibility in order to elevate Dr. Waldman's testimony to the level of materiality.

By reason of the foregoing, the trial court properly excluded Dr. Waldman's

opinion as to the emotional instability of the plaintiff.

Judgment affirmed.

EUBANK, P. J., and HAIRE, J., concur.