449 A.2d 677

**COMMONWEALTH of Pennsylvania**

v.

**Richard D. SHAFFER, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 4, 1981.

Filed Aug. 13, 1982.

James R. Protasio, Assistant Public Defender, Williams-port, for appellant.

Kenneth Brown, District Attorney, Williamsport, for Commonwealth, appellee.

Before SPAETH, BECK and LIPEZ, JJ.

BECK, Judge:

This appeal arises from the denial of appellant's application for relief under the Post Conviction Hearing Act ("PCHA").[1] Appellant pleaded guilty to murder generally and after a hearing, he was found guilty of murder in the second degree. He was sentenced to incarceration of four to twenty years. No post-verdict motions or direct appeal were filed.

■ Appellant raises as his first contention that he was denied effective assistance of counsel in that his trial counsel failed to attempt to suppress inculpatory statements, specifically two confessions to the fatal beating of his seventeen month old niece. We initially state our oft cited standard of review where ineffective assistance of counsel is alleged:

1. Act of January 25, 1966, P.L. 1580, 19 P.S. § 1180–1, *et seq.*

In considering appellant's claim of ineffective counsel, we are governed by *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967), where we held that a court must independently review the record and examine counsel's stewardship in light of available alternatives. The inquiry ceases and counsel is deemed to have been effective once the court is able to conclude that counsel's actions had a reasonable basis designed to effectuate the client's interests. The test is not whether it appears on hindsight that another course of action would have been more reasonable. Further, counsel is not ineffective in failing to assert a baseless claim.

*Commonwealth v. Schroth*, 495 Pa. 561, 564, 435 A.2d 148, 149 (1981).

In order to weigh this "ineffectiveness" claim, we must independently evaluate the record. It is clear that appellant's counsel did not move to suppress the inculpatory statements. The inquiry facing us is whether he had a "reasonable basis" for inaction. "[W]e will find a 'reasonable basis' for inaction if the thing not done had no likelihood of success." *Commonwealth v. Ford*, 491 Pa. 586, 421 A.2d 1040 (1980).

The record reveals the following set of facts. Agent John Bower of the Williamsburg Police Department was directed to go to the home of Larry and Linda Shaffer to investigate the death of their daughter. When he arrived, appellant, who was then seventeen years old, was alone inside the house. Notes of Testimony ("N.T.") (PCHA) at 85. The agent had been informed that "there was an incident that happened on High Street where there was a child injured...." (N.T.) (PCHA) at 87. Appellant knew the agent from previous contacts with the Juvenile Division, and after being asked what happened, appellant told the agent that he had something he wanted to tell him. (N.T.) (PCHA) at 87. The agent drove appellant to the Juvenile Division and advised him of his *Miranda* [*v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ] rights. (N.T.) (PCHA) at 91. The agent testified that he appeared alert.

(N.T.) (PCHA) at 93. Appellant then signed a statement, confessing that he fatally beat his niece.[2] (N.T.) (Guilty Plea Hearing hereinafter "G.P.") at 124. Approximately one hour later he provided a statement to the District Attorney with the Public Defender present. Prior to the taking of that statement, the Public Defender and appellant were left alone. (N.T.) (PCHA) at 97.

The Public Defender testified that he suggested to appellant that speaking to the police at that time might not be in his best interest, but that he was not precluded from doing so. He further testified that appellant decided to provide a second statement to the police, and that he was present when that statement was recorded.[3] (N.T.) (PCHA) at 119–121.

We find the instant case to be factually very similar to *Commonwealth v. Cunningham*, 471 Pa. 577, 370 A.2d 1172 (1977). In that case William Cunningham, a seventeen year old special education student, was convicted of first degree murder and burglary. He gave two statements prior to confessing his guilt. In the first statement, appellant said

**2.** The agent described the first statement as follows:

[A]bout 10:00 or 10:30 the children started to get up, and they came downstairs and he fed them, I believe it was cereal, and then a little later after that Michelle got awake and Richard went up to get her and he said that he had to change her diaper, and he said after he changed the diaper he came back downstairs and Michelle was carrying on again, or crying, so he went back up and here he had noticed or found she had done another job in her diaper and he tried to change her and while he was changing her he said she was just sort of fighting him or resisting him, and he got a little mad at her and smacked her in the face, and he said this didn't seem to help, so she kept it up, and he said he got mad then and he punched her, I think he said in the chest, and she continued to cry and carry on like this, and Richard said at this time he became very angry and he closed his eyes and just began hitting her. He said he didn't know how many times.

(N.T.) (G.P.) at 123–124.

**3.** The second statement was tape recorded. In that confession, appellant stated that he repeatedly struck his niece in the chest and the face and kicked her in the ribs. He also stated that he twisted her legs and heard cracking noises (presumably the sound of fracturing bones). He stated that she subsequently collapsed on the floor and did not move. (N.T.) (G.P.) at 1A–6A.

that he observed another individual stabbing the victim, and that he acted merely as a lookout. At a subsequent interview in the office of the District Attorney, appellant admitted that the other individual had not been involved and that he had acted alone. At that time, his parents were called and they hired an attorney. After consulting with that attorney, appellant confessed and this confession was transcribed, and subsequently introduced at trial. The *Cunningham* court held:

> [S]ince counsel was present and appellant was provided a full opportunity to confer with him, it is obvious that the Sixth Amendment right to counsel has been satisfied. The record also establishes that prior to the commencement of the counseled interview appellant had been apprised of his Fifth Amendment rights by police officials and his privately retained attorney. The facts of this case do not provide the slightest justification for a challenge to the waiver of the Fifth Amendment right as being a knowing one.

*Id.,* 471 Pa. at 584, 370 A.2d at 1175 (footnote deleted). The *Cunningham* court rejected appellant's "voluntariness" claim because "counsel was present and available to detect and describe even the most subtle coercive or suggestive influences if they in fact had existed. No such testimony was offered." *Id.,* 471 Pa. at 584, 370 A.2d at 1176. That court posed the issue as follows: "whether a counseled interrogation, preceded by an adequate opportunity to confer with counsel, is the kind of attenuating circumstances which would dissipate any prior illegality and 'purge the primary taint.'" *Id.,* 471 Pa. at 586, 370 A.2d at 1177 (footnote deleted). That court, citing *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), held that "the concept of attenuation and dissipation of prior taint . . . if it has any application at all, must certainly be satisfied when a confession is made in the presence of, and under the direction of counsel." *Id.,* 471 Pa. at 587–588, 370 A.2d at 1177. *See e.g., Commonwealth*

v. *Cockfield*, 465 Pa. 415, 350 A.2d 833 (1976); *Commonwealth v. Leveille*, 289 Pa.Super. 248, 433 A.2d 50 (1981).

In the instant appeal, allegations of coercion on the part of law enforcement personnel or representatives of the District Attorney are conspicuously absent. The primary taint that is alleged is the absence of an interested adult at appellant's first confession. Appellant acknowledges, as he must, that "at the time of his confession there was no per se rule that a Juvenile's incriminating statements given without an opportunity to consult with an interested adult is [sic] inadmissible...." (Appellant's Brief at 6.) The Pennsylvania Supreme Court in *Commonwealth v. Smith*, 472 Pa. 492, 498–499, 372 A.2d 797, 800 (1977) (footnotes deleted) discussed the above rule and enunciated its origins.

In a series of our decisions beginning with *Commonwealth v. Roane*, [459 Pa. 389, 329 A.2d 286 (1974)], we announced that the administering of *Miranda* warnings to a juvenile, without providing an opportunity to that juvenile to consult with a mature, informed individual concerned primarily with the interest of the juvenile, was inadequate to offset the disadvantage occasioned by his youth. The new rule appreciates that the inexperience of the minor affects not only his or her ability to understand the full implication and consequences of the predicament but also renders the judgment inadequate to assess the spectrum of considerations encompassed in the waiver decision. It was therefore reasoned that the impediment of immaturity can only be overcome where the record establishes that the youth had access to the advice of an attorney, parent, or other interested adult and that the consulted adult was informed as to the constitutional rights available to the minor and aware of the consequences that might follow the election to be made.

Because the instant case antedated the *Roane* decision, we find that it was not error for the trial judge to admit the first statement as well as the second and that a motion to suppress under the law as it then existed bore no likelihood of success. Assuming arguendo, however, that the same

facts presented themselves after *Roane*, we would find the taint sufficiently attenuated by the presence of counsel before and during the second confession and find no error in the admission of that confession. Of course, the first statement would not be admissible.

█ Appellant further argues that his guilty plea was not knowing and voluntary because it was not based on a voluntary confession. That confession could not have been voluntary, he argues, because he had an IQ of 71 and had only completed the ninth grade in a special education class. Our Supreme Court confronted a very similar situation in *Commonwealth v. Melton*, 465 Pa. 529, 351 A.2d 221 (1976) where appellant claimed that because he had an IQ of approximately 69, his guilty plea must be found to have been involuntary. The *Melton* court quoted *Commonwealth v. Harris*, 431 Pa. 114, 116–117, 243 A.2d 408, 409 (1968), in enunciating the test to be followed in evaluating the sufficiency of appellant's mental capacity to enter a guilty plea:

> We did not there establish a *per se* rule invalidating every guilty plea made by a defendant who was in some way mentally deficient. Instead, we reiterated that " '(t)he test to be applied in determining the legal sufficiency of (a defendant's) mental capacity to stand trial, or enter a plea at the time involved, is not the *M'Naghten* "right or wrong" test, but rather *his ability to comprehend his position as one accused of murder and to cooperate with his counsel in making a rational defense.*' "

*Id.*, 465 Pa. at 534, 351 A.2d at 224 (emphasis in original). At his PCHA hearing, trial counsel "testified that none of the doctors who had examined Melton had concluded that he was incompetent to stand trial or discuss the case with his attorneys." *Id.*, 465 Pa. at 534–535, 351 A.2d at 224. The Supreme Court concluded that appellant was able to enter a voluntary plea. That court concluded that "[a] low I.Q. alone is insufficient to establish involuntariness in either [his confession or guilty plea]." *Id.*, 465 Pa. at 536, 351 A.2d at 225.

We note that prior to the acceptance of appellant's guilty plea, in the instant case, the trial judge was in possession of the October 11, 1972 report of the medical staff of the Danville State Hospital where appellant had been committed for psychiatric evaluation. That report read in relevant part:

In summary, we have a young man who tests out on the Wechsler Adult Intelligence Scale with a Full Scale I.Q. of 71 and in whom we are unable to find any evidence of mental illness. The full scale I.Q. of 71 places this patient in the borderline level of retardation. However, it does not prevent him from functioning adequately in society. There are many persons functioning outside of the hospital and carrying on relatively responsible jobs with this level of intelligence quotient. In fact, the patient would not be eligible for admission to one of the state schools for mentally retarded persons.

We find no reason for psychiatric treatment either within or outside of the confines of a psychiatric institution. We believe that this young man is fully able to participate in his own defense. We further believe that he was perfectly competent and able to form and act on an intent to commit a felonious homicide.

We find nothing in the record to refute the fact that appellant was able to understand his position and to participate in his defense. Accordingly, we conclude that appellant's guilty plea was voluntary. The record would seem to indicate that appellant entered his guilty plea of his own volition. When asked by the judge presiding at his guilty plea hearing why he wished to so plead, appellant quite simply answered: "The detectives got evidence against me, and I know I did it, I beat her." (N.T.) (G.P.) at 20.

■ We do believe that when a juvenile seeks to confess guilt to a crime, close scrutiny must be paid to the surrounding circumstances. The United States Supreme Court in *Re Gault*, 387 U.S. 1, 55, 87 S.Ct. 1428, 1458, 18 L.Ed.2d 527 (1967) underscored the problems that attach to the waiver by juveniles of their constitutional rights:

If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair.

(Footnote deleted.)

We find that the presence of conscientious counsel before and during appellant's taped confession and at his guilty plea hearing enabled him to exercise his free will.

Appellant alleges finally that counsel was ineffective and that the trial court erred "in that both . . . failed to inform the appellant of his rights concerning appeal." The record reflects that appellant was advised of his appeal rights and that he understood that he had a right to an appeal and to the representation of court appointed counsel. We find therefore that his final claim is meritless.

Order affirmed.