681 P.2d 1368

**STATE of Arizona, Appellee,**

v.

**Manuel Romero GONZALES, Appellant.**

**No. 6051–PR.**

Supreme Court of Arizona,
In Banc.

March 22, 1984.

Reconsideration Denied May 8, 1984.

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Criminal Division, Barbara A. Jarrett, Asst. Attys. Gen., Phoenix, for appellee.

Frederic J. Dardis, Pima County Public Defender, Frank P. Leto, Deputy Public Defender, Tucson, for appellant.

GORDON, Vice Chief Justice:

Defendant-appellant Manuel Romero Gonzales was convicted of unlawful imprisonment in violation of A.R.S. § 13–1303. The issue on appeal is whether the trial court erred in excluding expert witness testimony on the defendant's low intelligence, mental retardation, and probable organic brain syndrome. The Court of Appeals affirmed the trial court. This Court has jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and Ariz.R.Crim.P. 31.19. We vacate the Court of Appeals' opinion. The case is remanded to the trial court for a new trial.

The facts necessary for disposition of this appeal are as follows. On December 1, 1980, the defendant was arrested and charged with sexual assault and kidnapping. On April 20, 1981, he was found incompetent to stand trial. Ariz.R.Crim.P. 11. On February 1, 1982, that finding was vacated, see Ariz.R.Crim.P. 11.6, and a jury trial was scheduled.

The state moved in limine to preclude the defendant from introducing the expert witness testimony of Dr. Wallace Diers. Dr. Diers planned to testify that the defendant had an intelligence quotient ("I.Q.") of 55, which rendered him mildly retarded, and that the defendant probably suffered from an organic brain syndrome that impaired his cognition and affected his ability to reason and exercise judgment. The state argued that Dr. Diers' testimony was irrelevant to any issue in the case because the defendant had been found competent to stand trial. Defense counsel urged that Dr. Diers' testimony was relevant for two reasons. First, it would help her to explain to the jury the defendant's manner and demeanor when he was called to testify. Second, it would help her explain why the defendant lied to the police on the day of his arrest,[1] and why he might be inordinately confused on cross-examination. The court found that the proposed I.Q. testimony had "logical relevance because the jury could reasonably infer that if someone has a low I.Q. they are less likely to understand the questions that are asked of them and more likely to give an improper answer that's subject to misinterpretation," but nonetheless granted the motion to suppress on the grounds that the probative value of the testimony was outweighed by the danger of confusion of the issues and unnecessary delay.

On the following day, out of the hearing of the jury, defense counsel sought to make an actual offer of proof of Dr. Diers' excluded testimony for the record. She urged the court to reconsider its decision to exclude the testimony on two grounds. First, as argued at the motion in limine, she said it would provide the jury with information necessary for a fair assessment of defendant's credibility. Second, she stated that the evidence was relevant and important to defendant's "mere presence" defense.

---

**1.** Defendant told police that he had been at a party on the evening of the alleged rape and kidnapping.

The trial court declined to reverse its decision to exclude Dr. Diers' testimony. It stated that "expert testimony [on defendant's intelligence] would interject into the trial, excessive emphasis on the matter of sympathy, and I think a jury can determine itself without expert testimony whether a witness is telling the truth or lying or confused or not * * *." At that point, defense counsel offered the following explanation of why Dr. Diers' testimony, specifically, proffered testimony on organic brain syndrome, was vital to the "mere presence" defense:

> "[I]t's our theory of the case that [defendant] was merely present and that's why he didn't call the police or try to stop [the sexual assault he was charged with participating in] * * *. [T]here's an issue of intent, rape or sexual assault [is] a specific intent crime, and I feel that's an element of the defense and our defense to that element is that he did not and could not have the specific intent to commit the rape."

The trial court ordered incorporation of Dr. Diers' testimony from the rule 11 hearing at which defendant was found competent to stand trial[2] and denied defense counsel's request for an actual offer of proof.

On March 23, 1982, the defendant was found guilty of unlawful imprisonment, A.R.S. § 13–1303(A),[3] a lesser included offense of kidnapping. On appeal, the defendant argued that the trial court's exclusion of Dr. Diers' testimony was improper. The Court of Appeals rejected the argument and affirmed. We vacate the Court

of Appeals' decision and reverse the conviction. We find that the trial court failed to recognize the relevance of the challenged testimony with respect to defendant's "mere presence" defense, and underestimated the value of the testimony with respect to its ability to provide the jury with information essential to a fair, well-informed assessment of defendant's credibility. Because the trial court's exclusion of the testimony effectively precluded the defendant from introducing evidence essential to his case, the trial court's decision resulted in a denial of defendant's right to due process that was not harmless.[4]

As defined in Ariz.R.Evid. 401, " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ariz.R.Evid. 403 provides that:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In determining whether the probative value of evidence outweighs the danger of prejudice and confusion, the trial court must examine the purpose of the offer. *State v. Chapple*, 135 Ariz. 281, 660 P.2d 1208 (1983). Because the trial court, in the instant case, failed to acknowledge and ex-

---

**2.** At that hearing, Dr. Diers had explained the defendant's mental condition and stated that his examination of defendant indicated that the defendant was "marginally competent" to stand trial.

**3.** A.R.S. § 13–1303(A) provides that "[a] person commits unlawful imprisonment by knowingly restraining another person."

**4.** Arguments made in cases involving a defendant's understanding or intent are amongst the most complex and most difficult to grasp as they often depend on fine line distinctions and esoteric concepts. We realize how difficult it must be for trial courts to recognize and assess these complex arguments and to make decisions as to the relevance and admissibility of evidence

based on such assessments in the course of a pre-trial hearing. Our general rule, therefore, is that we will not disturb a trial court's decisions on admissibility of evidence, absent a clear abuse of discretion. *State v. Williams*, 133 Ariz. 220, 650 P.2d 1202 (1982); *State v. Clark*, 126 Ariz. 428, 616 P.2d 888, *cert. denied* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). Where the trial court's decision effectively precludes a defendant from arguing his or her defense, however, we must intervene. "[A]pplication of state rules of evidence to an accused must not effectively preclude presentation of the accused's defense," *State v. Parker*, 121 Ariz. 172, 174, 589 P.2d 46, 48 (App.1978).

amine a vital purpose for which the challenged testimony was offered, and because that failure resulted in a denial of the defendant's right to due process, we find its decision to exclude the challenged testimony to be error.

Defendant's "mere presence" defense was that though he was present in the apartment in which the alleged rape occurred, he did not participate in it. He claimed that he had met the alleged victim ("Ms. O") at the Brown Derby Bar sometime before November 30 and again, someplace other than at that bar, on November 30. He testified at trial that when he met her the second time, "she told [him] to see if [he] could get some weed [marijuana]." Having obtained marijuana, he went to meet her at Antonio's Bar. He then "showed her a joint and she [went with him]." The record indicates that sometime that evening, defendant, Ms. O, and two other men went to defendant's apartment. While there, the foursome drank whiskey and smoked marijuana. At some point, defendant retired to the bathroom. He testified that while in the bathroom, he heard Ms. O screaming, opened the bathroom door, and saw that "[s]he had her whole clothes off, [and that the] one guy, I don't know his name, was on top of her." He testified that he emerged from the bathroom only after the two other men had left, that he then kissed Ms. O, who responded by biting his tongue, and that he gave Ms. O a pair of his pants to wear home.

As noted above, defendant was charged with kidnapping and sexual assault. Both of these are specific intent crimes.[5] At the end of defendant's trial the judge instructed the jury on these two crimes and on unlawful imprisonment. Because the defendant was acquitted of kidnapping and sexual assault, we need not consider whether the trial court's failure to recognize the relevance of the excluded testimo-

ny to those crimes was harmful. Because defendant was, however, found guilty of unlawful imprisonment, we must determine if the jury would have found beyond a reasonable doubt that on November 30, 1981 the defendant had knowingly restrained Ms. O, even if Dr. Diers' excluded testimony had been admitted.

The judge gave the jury the following instruction on unlawful imprisonment:

"In order to find that the defendant is guilty of unlawful imprisonment, there must be proof beyond a reasonable doubt that the defendant knowingly restrained Ms. O * * *.

"Knowingly means with respect to conduct or to a circumstance described by a statute defining an offense, that a person is aware or believes the circumstance exists."

We note further that "restrain," within the meaning of A.R.S. § 13–1303 means:

"to restrict a person's movements without consent, without legal authority, and in a manner which interferes substantially with such person's liberty, by either moving such person from one place to another or by confining such person."

A.R.S. § 13–1301(2).

To convict the defendant of unlawful imprisonment, the jury had to find beyond a reasonable doubt that the defendant was aware or of the belief that his actions or omissions were in the nature of a restriction on Ms. O's movements. Can we say that had the excluded testimony been admitted the jury's conclusion would have been the same? Would Dr. Diers' testimony have added reasonable doubt to the jurors' findings that the defendant had knowingly restrained Ms. O?

The jury presumably found that the defendant had held down, but not raped, Ms. O or that his failure to intervene or call for help constituted a restraint on

---

**5.** A.R.S. § 13–1304(A) provides that "[a] person commits kidnapping by *knowingly* restraining another person with intent to * * *." (emphasis added)

A.R.S. § 13–1406(A), as in effect at the time of the incident, provided that "[a] person commits

sexual assault by *intentionally or knowingly* engaging in sexual intercourse or oral sexual contact with any person not his or her spouse without consent of such person." (emphasis added)

her freedom of movement. Dr. Diers' proffered testimony, that the defendant probably had organic brain damage and that a person with organic brain syndrome would suffer a generalized impairment of his or her cognitive functioning, was certainly relevant to the latter.[6] Defense counsel argued that the defendant failed to intervene or call for help because he was confused and did not understand that failure to act to help Ms. O was in the nature of a restraint on her freedom of movement. There is no indication in the record that the trial court acknowledged this all-important connection between defendant's mental condition and the "mere presence" defense. The court, in consistently excluding Dr. Diers' testimony, simply reiterated its view that Dr. Diers' testimony was not necessary to enhance the defendant's credibility or to explain confusion the defendant might experience on cross-examination. Where the trial court is shown, in an offer of proof or otherwise, that a defendant's mental condition has probative value to a material issue in dispute, psychiatric testimony must not be excluded. *See Herman v. Vigil*, 11 Ariz.App. 282, 464 P.2d 353 (1970). Exclusion of such testimony constitutes a denial of due process.[7] *See State v. Christensen*, 129 Ariz. 32, 36, 628 P.2d 580, 584 (1981) ("[I]t is inconsistent with fundamental justice to prevent a defendant from offering evidence to dispute the charge against him.")

Though this denial of due process in itself requires reversal, we feel compelled to comment on other aspects of the trial court's treatment of the proffered testimony. This Court has never directly addressed the significance of I.Q. tests and psychiatric testimony or given the trial courts guidance with respect thereto. In order for trial courts to exercise their discretion under Ariz.R.Evid. 403 in a just and consistent manner, *see State v. Williams, supra* (the weighing and balancing under rule 403 is within the discretion of the trial court), we feel it is necessary that we do so here.

The state argued that expert witness testimony anent defendant's I.Q. was irrelevant because there is no correlation between a person's intelligence and his or her honesty. Though the defendant did not aver such a correlation and we are aware of none, we recognize, as did the trial court, that a witness who is mildly retarded may appear to the jury to be dishonest even when telling the truth because of underdeveloped social skills. Where apprehensive responses to questions by counsel and failure to look directly at the jurors during trial result from low intelligence rather than from consciousness of guilt or fabrication of the truth, a witness' intelligence is relevant to assessing his or her credibility; evidence that goes to informing the jury of his or her I.Q. should be admitted absent a sound basis for its exclusion.

6. At the Rule 11 hearing, incorporated into the record in place of an actual offer of proof, the following was recorded:

"Q. (By defendant's former counsel): So [organic brain damage] would effect [sic] someone's ability to use judgment or make a decision, is that correct?"

"A. (By Dr. Diers): Yes.

"Q. It would also effect [sic] a person's ability to even understand what's going on around them would it not?

"A. Certainly would."

7. We realize that trial courts are in the best position to determine whether jurors need the assistance of expert testimony, *see* Ariz.R.Evid. 702. The trial court here determined in limine that Dr. Diers' proffered testimony would not assist the jury in understanding evidence to be presented or in determining a fact in issue. The presence and effects of mild retardation and organic brain syndrome are not necessarily within the common experience and knowledge of lay people. Therefore, when retardation and organic brain syndrome are relevant to a fact in issue, expert testimony is necessary to explain these impairments. *See State v. Betancourt*, 131 Ariz. 61, 638 P.2d 728 (App.1981) (refusal to allow defendant's medical witness to testify to effects of L.S.D. on average human was error as such information is beyond scope of common experience and knowledge). Since the trial court did not appreciate the relevance of defendant's mental condition, it presumably did not reach the question of whether expert testimony was necessary with respect to that condition.

Furthermore, when an accused takes the stand at trial, his or her demeanor is a vital "piece" of evidence. In his opening statement, the prosecutor told the jury that "[o]ne of the ways [to determine who is telling the truth is to] watch [the witnesses'] faces, watch whether they look you straight in the eye or look down * * *." A witness who averts his or her gaze is thought to be less credible than one who looks directly at the jury. In *State v. Mosley*, 119 Ariz. 393, 401, 581 P.2d 238, 246 (1978), we held that "any evidence that substantiates the credibility of a prosecuting witness on the question of guilt is material and relevant, and may be properly admitted." We hold today that any evidence that substantiates the credibility of an accused, testifying in his or her own defense, is material and relevant and must be admitted unless the trial court finds that admission of such evidence is highly likely to result in irremediable prejudice, confusion, or delay. *See State v. Dixon*, 126 Ariz. 613, 618, 617 P.2d 779, 784 (App.1980) ("Where the direct conflict of testimony between the [key prosecution witness] and the defendant is of such paramount importance, the jury should have before it all information which might reflect on the truthfulness of the defendant."). Therefore, where there is a showing, at an offer of proof or otherwise, that proffered evidence will enhance a defendant-witness' credibility by, for example, explaining his or her manner on the stand, that evidence should be admitted absent severe and irremediable prejudice, confusion, or delay.

The court indicated that delay in the proceedings was one of the factors militating against admitting Dr. Diers' testimony. It assumed that the state would challenge Dr. Diers' determination of defendant's I.Q. and stated that the time it would take to litigate I.Q. was unwarranted because I.Q. determinations "are of questionable accuracy" and because the "issue, as I see his competence, has already been decided."

■ Ariz.R.Evid. 403 authorizes trial courts to determine the probative value of relevant evidence and, in turn, determine if that value is substantially outweighed by a variety of dangers. It does not authorize courts, when making the determination of probative value, to consider personal biases against particular forms of evidence. I.Q. tests are widely accepted as relevant in cases where a person's understanding of circumstances is at issue. *See People v. Baker*, 9 Ill.App.3d 654, 292 N.E.2d 760 (1973) (defendant's I.Q. admitted to support argument that he did not knowingly and intelligently waive his right to remain silent and his right to counsel); *People v. Sanchez*, 446 N.Y.S.2d 164, 112 Misc.2d 100 (Sup.1982) (defendant's I.Q. admissible as competent evidence on defense of duress); *Commonwealth v. Shaffer*, 303 Pa.Super. 259, 449 A.2d 677 (1982) (defendant's I.Q. admitted to support argument that he did not knowingly and voluntarily confess); *State v. Lanning*, 5 Wash.App. 426, 487 P.2d 785 (1971) (mental retardation and a low I.Q. are relevant in determining if defendant knowingly and intelligently confessed). A trial court must not allow its personal views as to the accuracy of psychological tests to color its perception of their inherent value and their value to the jury in a given case.

■ In addition, as indicated above, the trial court considered and gave significant weight to the prior judicial finding that the defendant was competent to stand trial. Whether a person is competent to stand trial and whether a person is of a level of intelligence which may be relevant to assessing his credibility as a witness in his defense are two different inquiries. One depends on the defendant's ability to understand proceedings against him or her and to assist in his or her defense. *See* Ariz.R.Crim.P. 11.1. The other focuses on whether the defendant's low intelligence or mental condition will taint the jurors' assessment of his or her credibility. The fact that a defendant is found to be able to assist in his or her defense does not mean that evidence of his or her I.Q. or mental condition would not assist the jury in assessing his or her credibility or that admission of that evidence would be cumulative.

As noted above, evidence that will enhance the jury's ability to judge an accused's credibility should be admitted absent strong reasons for its exclusion.

We vacate the Court of Appeals' opinion and reverse the conviction. The case is remanded to the trial court for a new trial.

HOLOHAN, C.J., and FELDMAN, J., concur.

HAYS, Justice, concurring in the result:

I concur in the result but I take exception to the broad sweep of the majority opinion. As I indicated in my dissent in *State v. Chapple*, 135 Ariz. 281, 660 P.2d 1208 (1983), I am reluctant to see the expert witness take over the function of the jury in testing the credibility of a witness. A part of the expert's testimony would permit the expert to say that the usual manner of testing credibility of a witness cannot be applied to a retardate or person of low intelligence. From that point the jury must follow the path laid out by the expert. Next, the poor, shy, inexperienced, uneducated, inarticulate witness will have to have his credibility, or lack thereof, explained by an expert.

As a final word on this issue, I must also inquire of the majority: are we paving the way to a judicially imposed defense of diminished responsibility?

In all honesty, I must concede that the trial court should perhaps have permitted the expert to testify generally as to mental retardation. For that reason I concur in the result.

CAMERON, Justice, concurring:

I concur in Justice Hays's concurrence.