J-S53021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| SASHA HERNANDEZ | |
| Appellee | No. 2052 MDA 2014 |

Appeal from the PCRA Order November 6, 2014
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0001480-2009

BEFORE:  DONOHUE, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED OCTOBER 15, 2015**

The Commonwealth appeals from the order entered November 6, 2014, in the Lebanon County Court of Common Pleas, granting Sasha Hernandez's first petition for collateral relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq*.  On November 23, 2009, Hernandez was sentenced to an aggregate term of 39½ to 79 years' imprisonment, pursuant to her negotiated guilty plea to charges of third-degree murder, aggravated assault, persons not to possess firearms, possession of a firearm with altered manufacturer's number, riot, criminal conspiracy, possession of a firearm by minor, recklessly endangering another person, and disorderly conduct.[1]  On November 6, 2014, the PCRA

---

[1] 18 Pa.C.S. §§ 2501, 2702, 6105, 6110.2, 5501(3), 903, 6110.1, 2705, and 5503(a)(1), respectively.

court granted Hernandez's petition based upon the ineffective assistance of plea counsel. On appeal, the Commonwealth contends the PCRA court erred in determining plea counsel was ineffective for advising Hernandez to enter a guilty plea. For the reasons that follow, we affirm.

The facts and procedural history underlying this appeal were summarized by this Court in a prior memorandum decision as follows:

> The charges arose on July 31, 2009, when police were called to the scene of a shooting in Lebanon City. A witness, Brittany Ritter ("Ritter"), told the police that she had observed a woman who was dressed like a man shoot the victim, Steven Santiago ("Santiago"). Santiago was transported from the scene to a hospital, where he died. Ritter indicated that the shooter's name was Sasha. At the time of the shooting, Ritter was engaged in a fist fight with Sasha's mother, Rosa Lopez ("Lopez"). After the shooting, Ritter observed Sasha run into a building at 46 S. 8th Street.
>
> The police went to the building at 46 S. 8th Street, where an officer spoke to Lopez. Lopez indicated that she lived there with her daughter, Hernandez, who was not home at the time. The police maintained a perimeter around the building. A female person later identified as Hernandez, age 16, exited the rear of the building and told a sheriff's deputy that she was "the one you are looking for." Hernandez indicated that she was sixteen years old, that her mother was involved in a fist fight, and that Hernandez had shot a man who was also involved in the fight.
>
> The police charged Hernandez with the above-mentioned crimes.[2] Initially, she was charged with general homicide. On November 23, 2009, Hernandez pled guilty to the above-mentioned charges pursuant to a negotiated plea agreement with the Commonwealth. Prior to accepting Hernandez's plea, the trial court conducted an oral guilty plea colloquy. N.T., 11/23/09, at 3-10. Hernandez also completed a written guilty plea colloquy form. The trial court accepted Hernandez's guilty plea, and sentenced her, in accordance with the terms of the plea agreement, to an aggregate prison term of 39½ to 79 years.

_____

[2] Although Hernandez was sixteen years old, it appears from the record that she was charged as an adult with the above-mentioned crimes.

_____

On December 1, 2009, Hernandez filed a *pro se* Motion to Modify and Reduce Sentence. The Commonwealth also filed a Motion to modify sentence. On December 9, 2009, counsel for Hernandez filed a Motion to withdraw and to appoint conflict counsel stating that Hernandez wished to have conflict counsel appointed.

On December 23, 2009, the trial court denied counsel's Motion to withdraw and Hernandez's Motion to modify and reduce sentence. The trial court modified the judgment of sentence, pursuant to the Commonwealth's Motion, to require that Hernandez pay restitution to the victim's family for funeral expenses.

Hernandez filed a timely Notice of Appeal of the judgment of sentence.

*Commonwealth v. Hernandez*, 11 A.3d 1036 [2188 MDA 2009] (Pa. Super. 2009) (unpublished memorandum at 1-3).

On direct appeal, counsel filed a petition to withdraw and an ***Anders***[2] brief. On August 24, 2010, a panel of this Court affirmed the judgment of sentence and granted counsel's petition to withdraw. ***See id.*** Less than one year later, on August 10, 2011, Hernandez filed a timely, *pro se* PCRA petition, in which she asserted, *inter alia*: (1) plea counsel was ineffective in pressuring her to plead guilty and failing to object when she was charged as an adult; (2) some of her convictions violated double jeopardy; and (3) the

_____

[2] ***Anders v. California***, 386 U.S. 738 (1967).

police interrogated her without permitting her to see a parent or an attorney. *See* Motion for Post Conviction Collateral Relief, 8/24/2011, at 3, 7. Counsel was appointed, but failed to amend Hernandez's petition. Thereafter, on December 28, 2011, the PCRA court notified Hernandez of its intent to dismiss her petition without first conducting an evidentiary hearing pursuant to Pa.R.Crim.P. 907. Although Hernandez filed a counseled response requesting a hearing, the PCRA court denied Hernandez's petition on January 10, 2012.

On appeal, a panel of this Court determined that Hernandez's petition was essentially uncounseled since appointed counsel failed to file an amended PCRA petition. Accordingly, the panel vacated the order denying PCRA relief, and remanded for the appointment of new counsel. *Commonwealth v. Hernandez*, 55 A.3d 152 [212 MDA 2012] (Pa. Super. 2012) (unpublished memorandum). Upon remand to the PCRA court, new counsel was appointed, and, on January 3, 2013, filed an amended PCRA petition focusing on plea counsel's ineffectiveness in (1) inducing Hernandez to plead guilty by advising her she would receive a lifetime sentence if she proceeded to trial; (2) failing to file a motion to suppress the statement Hernandez made to police without a parent or counsel present; and (3) failing to challenge Hernandez being charged as an adult. *See* Amended Petition for Post Conviction Relief Pursuant to the Post Conviction Relief Act, 3/1/2013, at ¶ 14. The PCRA court conducted a hearing on Hernandez's amended petition on May 20, 2013, at the conclusion of which it took the

matter under advisement. Thereafter, on November 6, 2014, the PCRA court entered an order granting Hernandez's PCRA petition, and providing her the opportunity to withdraw her guilty plea.[3] This timely Commonwealth appeal follows.[4]

On appeal, the Commonwealth contends the PCRA court erred in finding plea counsel was ineffective for advising Hernandez to enter a guilty plea to third-degree murder, and in granting her the opportunity to withdraw her guilty plea.

Our review of the Commonwealth's claim on appeal is guided by the following:

> In reviewing the propriety of an order granting or denying PCRA relief, an appellate court is limited to ascertaining whether the record supports the determination of the PCRA court and whether the ruling is free of legal error. **Commonwealth v. Johnson**, 600 Pa. 329, 966 A.2d 523, 532 (2009). We pay great deference to the findings of the PCRA court, "but its legal determinations are subject to our plenary review." **Id.** Furthermore, to be entitled to relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that the conviction or sentence arose from one or more of the errors enumerated in section 9543(a)(2) of the PCRA. One such error involves the ineffectiveness of counsel.

_____

[3] The record does not reveal why the PCRA court failed to enter a ruling for more than 15 months after the hearing.

[4] On December 8, 2014, the PCRA court directed the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth complied with the court's directive, and filed a concise statement on December 22, 2014.

To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Id.* "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission. *Id.* at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

*Commonwealth v. G.Y.*, 63 A.3d 259, 265 (Pa. Super. 2013).

Furthermore,

[i]t is clear that a criminal defendant's right to effective counsel extends to the plea process, as well as during trial. However, "[a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."

*Commonwealth v. Wah*, 42 A.3d 335, 338-339 (Pa. Super. 2012) (citation omitted).

In the present case, the PCRA court provided two bases for its determination that plea counsel was ineffective for advising Hernandez to accept the Commonwealth's plea offer. First, the court found counsel erred in "stressing to" Hernandez that the likely outcome of a trial would be a first-

degree murder conviction and concomitant sentence of life imprisonment.[5] *See* PCRA Court Opinion, 11/6/2014, at 18. Conversely, the PCRA court determined that if Hernandez had proceeded to trial, a jury instruction on third degree murder and voluntary manslaughter "would have been warranted under the facts;" therefore, the court determined that, contrary to counsel's implications, a first-degree conviction was not a foregone conclusion. *Id.* at 19. The court found that "[w]ithout such information, … [Hernandez] was unable to make an informed decision." *Id.* at 22. Moreover, the court noted "[t]he alternative not chosen by counsel, pursuing a conviction of a lesser crime, had a greater likelihood of [Hernandez] receiving a lesser sentence than that offered in the plea bargain." *Id.*

Second, the PCRA court concluded plea counsel was ineffective "for recommending [Hernandez] accept the plea offer which was tied to her mother receiving a more lenient sentence." *Id.* at 33 (footnote omitted). The court opined: "this offer was not in [Hernandez's] best interest and [] she was induced to enter her plea by being coerced into making a decision which would impact and determine a good portion of the rest of her own life based on what was best for her mother in the short-term." *Id.* at 31. Accordingly, the PCRA court granted Hernandez's petition for relief, and

---

[5] The PCRA court recognized that "defense counsels' foremost objective was to prevent [Hernandez] from receiving a First Degree Murder conviction and its accompanying mandatory life sentence[.]" PCRA Court Opinion, 11/6/2014, at 17.

provided her with the opportunity to withdraw her guilty plea and proceed to trial.[6]

The Commonwealth asserts, however, the PCRA court improperly granted Hernandez relief. First, it argues the court erred in finding Hernandez could have been convicted of voluntary manslaughter[7] had her case proceeded to trial. The Commonwealth contends the PCRA court raised this claim *sua sponte*, based solely on a statement Hernandez made in a *pro se* motion to modify her sentence.[8] **See** Commonwealth's Brief at 21. The

_____

[6] We note the PCRA court also found arguable merit in Hernandez's claim that plea counsel was ineffective for failing to file a pretrial motion seeking suppression of her statement to police, which she gave without a parent or counsel present. **See** PCRA Court Opinion, 11/6/2014, at 16. However, the court ultimately determined counsel had a reasonable basis for deciding not to pursue a suppression motion. **See id.** (noting that plea counsel explained she "felt that it was more prudent not to pursue suppression of the statements" because (1) the Commonwealth had advised counsel that no plea offer would be extended if a pretrial motion was filed, and (2) the Commonwealth had "ample eyewitness testimony which placed [Hernandez] at the scene and identified her as the shooter.").

[7] The crime of voluntary manslaughter involves either (1) a killing committed by an actor who is acting under a "sudden and intense passion resulting from serious provocation" by the victim or another whom the actor intended to kill but negligently cause the death of the victim, or (2) an intentional killing committed by an actor under an unreasonable, but mistaken, belief that the killing is justified. 18 Pa.C.S. § 2503(a)-(b).

[8] In her *pro se* motion, Hernandez averred the following:

> The defendant was at her place of residence and attacked with her mother and reacted, in what in her eyes, was a way of defending herself and her mother from what she conceived as imminent bodily injury.

*(Footnote Continued Next Page)*

Commonwealth emphasizes that Hernandez did not assert she acted in defense of her mother either in her amended petition, or during her testimony at the PCRA hearing. Had she done so, the Commonwealth contends it would have offered evidence to rebut such a claim. *See id.* at 23 n.7.

While we acknowlege Hernandez did not specifically assert that a jury could have found her guilty of only voluntary manslaughter, we agree with Hernandez that "it is implicit in [her argument before the PCRA court] that had she proceeded to trial she could have been convicted of a lesser offense[.]" Hernandez's Brief at 12. Because Hernandez entered a plea and waived her right to a preliminary hearing, the certified record contains very few facts regarding the incident in question. It is undisputed, however, that Hernandez's mother was involved in a fistfight with another woman when Hernandez pulled out a gun and shot the victim. What is unknown is whether the victim was involved in the fight. Even if he was an innocent bystander, however, the facts would have supported an instruction on third-degree murder, and, depending on extenuating circumstances, may have supported a charge on voluntary manslaughter. Therefore, we disagree with

*(Footnote Continued)* —————————

Motion to Modify and Reduce Sentence, 12/8/2009, at 3.

the Commonwealth's assertion that his claim was raised *sua sponte* by the

PCRA court.[9]

Moreover, we note the PCRA court did not grant relief because it

determined a jury would have **most likely** convicted Hernandez of voluntary

manslaughter. Rather, the court concluded plea counsel did not provide

Hernandez with the information she needed to make an **informed** decision.

The court opined:

_____

[9] We recognize that during the PCRA hearing, plea counsel testified that she and co-counsel had conducted their own investigation and spoke with some of the potential witnesses to the crime. N.T., 5/20/2013, at 26. Counsel also testified she talked to Hernandez "about the video surveillance." **Id.** However, as the PCRA court noted in its opinion:

> It is unclear from the testimony whether defense counsel had viewed any video surveillance of the incident or whether they merely suspected that such surveillance existed. It is also unclear what portion of the incident was depicted in any such surveillance video.

PCRA Court Opinion, 11/6/2014, 12 n.8.

Furthermore, we disagree with the Commonwealth's assertion that the PCRA court engaged in a "distorted hindsight analysis," relying on statements Hernandez made in a *pro se* filing after the plea was entered. **See** Commonwealth's Brief at 25. As noted above, the **undisputed** facts demonstrate that, at the very least, a jury instruction on third degree murder would have been warranted. **See Commonwealth v. Morris**, 958 A.2d 569, 576 (Pa. Super. 2008) ("Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice.") (citation omitted), *appeal denied*, 991 A.2d 311 (Pa. 2010).

At the PCRA hearing, [Hernandez] stated numerous times that she told her attorneys that she wanted to go to trial on these charges. [Hernandez's] father also urged her to go to trial rather than enter a plea. We believe that proceeding with trial on these facts should have been more fully explored with [Hernandez]. If [Hernandez], after discussions with counsel and her father, desired to go to trial based on the possibility that she would be convicted of a lesser offense we believe that decision should have been honored. The alternative not chosen by counsel, pursuing conviction of a lesser crime, had a greater likelihood of [Hernandez] receiving a lesser sentence than that offered in the plea bargain. [Hernandez] could have even been convicted of Third-Degree Murder, to which she was already facing the maximum penalty under the plea agreement. [Hernandez] has indicated that, had she been cognizant of possible defenses and the possibility of being convicted of a lesser crime than First-Degree Murder, she may have decided that it was worth taking the risk. Without such information, however, she was unable to make an informed decision.

PCRA Court Opinion, 11/6/2014, at 21-22.

We recognize that during the PCRA hearing, Hernandez acknowledged plea counsel explained to her the different types of murder and the penalties for each crime. N.T., 5/20/2013, at 17. Further, Hernandez indicated during the plea colloquy that she was satisfied with the representation by her attorneys, and she was entering the plea of her own volition. N.T., 11/23/2009, at 10. **See Commonwealth v. Turetsky**, 925 A.2d 876, 881 (Pa. Super. 2007), *appeal denied*, 940 A.2d 365 (Pa. 2007) ("A person who elects to plead guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy.").

Nevertheless,

[i]n order for a guilty plea to be constitutionally valid, the guilty plea colloquy must affirmatively show that **the defendant understood what the plea connoted and its consequences**. This determination is to be made by examining the **totality of the circumstances surrounding the entry of the plea**. Thus, even though there is an omission or defect in the guilty plea colloquy, a plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose that the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea.

***Commonwealth v. Yeomans***, 24 A.3d 1044, 1047 (Pa. Super. 2011) (citation omitted and emphasis supplied).

A review of the record in the present case reveals the following. Hernandez was only 16-years-old at the time of the shooting. Although she had a prior criminal record, none of her prior convictions involved violent acts. ***See*** N.T., 11/23/2009, at 13. The plea agreement offered by the Commonwealth, although sparing her a potential sentence of life imprisonment, required her to enter a plea of guilty to **all the crimes** with which she was charged, and agree to **consecutive statutory maximum sentences** for each conviction that did not merge.[10] Furthermore, the plea offer was contingent upon her mother's plea.

_____

[10] Pursuant to the negotiated plea, Hernandez was sentenced as follows: 20 to 40 years' imprisonment for third degree murder; five to 10 years' imprisonment for persons not to posess firearms; five to 10 years' imprisonment for possession of a firearm with altered manufacturer's number; three and one-half to seven years' imprisonment for riot; three and one-half to seven years' imprisonment for conspiracy; and two and one-half to five years' imprisonment for possession of a firearm by minor. Each sentence was imposed to run consecutively. Only the charges of aggravated

*(Footnote Continued Next Page)*

During the PCRA hearing, Hernandez testified that she initially refused the plea offer when it was presented to her by counsel. N.T., 5/20/2013, at 12. However, only 15 minutes later, plea counsel returned with another attorney from the Public Defenders' Office. Plea counsel told her "it is possible that [she] could get life" and "[i]t is better to take this plea than to go to trial with a possibility that [she] could possibly lose." *Id.* Hernandez stated she also asked whether she could be convicted of involuntary manslaughter, and the other attorney told her "involuntary manslaughter is basically like holding a gun and it accidentally goes off." *Id.* She explained she felt "pressured" the second time counsel presented the plea. *Id.*

> [Plea counsel] basically told me that she did not want to gamble with my life. If I was to lose, I could get life. But this was the only plea bargain that I was going to get.

*Id.* at 16. Hernandez then decided to accept the plea. She noted:

> I did not know what to do at the time. I was sixteen. I just felt like my Public Defender knew what she was doing, so I just pled guilty.

*Id.* at 15.

To further complicate matters, Hernandez was not permitted to speak with her mother before deciding whether to accept the plea offer. *Id.* at 14. Hernandez was told "once [she] was sentenced, [they] were allowed to be in contact with each other." *Id.* Although she did have an opportunity to

*(Footnote Continued)* ————————————

assault, REAP, and disorderly conduct merged for sentencing purposes. *See* Plea Offer, 10/28/2009, at 1.

speak with her father, who urged her to **reject** the plea and told her he would try to get her "better counsel," Hernandez told plea counsel that her father had not "really been in her life." *Id.* at 30. Therefore, Hernandez relied upon the advice of plea counsel, and accepted the Commonwealth's negotiated plea agreement.

In the present case, Hernandez, a juvenile defendant, entered a plea to third degree murder while believing she was virtually assured at trial to be convicted of first-degree murder and sentenced to life imprisonment. More importantly, there was no mention during the in-court colloquy that Hernandez's plea offer was contingent upon her mother's, or that the contingent pleas would result in a maximum county sentence for her mother, but a maximum state sentence of 79 years' imprisonment for Hernandez. Accordingly, we find Hernandez's claim has arguable merit.

Moreover, with regard to the second prong of the ineffectiveness test, under the unique facts of this case, we find it was unreasonable for plea counsel to advise Hernandez to accept the Commonwealth's plea offer, which spared her only the possibility of a sentence of life imprisonment, when Hernandez initially refused to accept the offer, but relented only after counsel returned with another attorney to convince her to do so. This pressure, coupled with counsel's statement to Hernandez that she "did not

want to gamble with [Hernandez's] life,"[11] raises concerns regarding the voluntariness of the plea.

Lastly, with regard to the prejudice prong, the PCRA court concluded "had [Hernandez] been cognizant of possible defenses and the possibility of being convicted of a lesser crime than First-Degree Murder, she may have decided it was worth taking the risk" to proceed to trial. PCRA Court Opinion, 11/6/2014, at 22. We agree. Hernandez testified that she initially rejected the plea offer when it was first presented to her, and only agreed to accept it after plea counsel returned with another attorney, which made her feel "pressured." *See* N.T., 5/20/2013, at 12. She explained, "I believe that if [they] did not come back the second time, I would have took the trial." *Id.* at 13.

This Court has previously stated: "We do believe that when a juvenile seeks to confess guilt to a crime, close scrutiny must be paid to the surrounding circumstances." *Commonwealth v. Shaffer*, 449 A.2d 677, 681 (Pa. Super. 1982) (rejecting 17-year-old appellant's claim that counsel was ineffective for failing to suppress taped police statement in which he confessed to fatally beating his 17-month-old niece; concluding "the

---

[11] N.T., 5/20/2013, at 16. Although plea counsel denied that she told Hernandez that Hernandez should take the plea, *see id.* at 28, credibility determinations are left to the discretion of the PCRA court. *Commonwealth v. Treiber*, ___ A.3d ___, ___, 2015 WL 4886374, at *3 (Pa. Aug. 17, 2015).

presence of conscientious counsel before and during appellant's tape confession and at his guilty plea hearing enabled him to exercise his free will."). Here, we conclude the PCRA court did not err or abuse its discretion when it determined plea counsel did not provide Hernandez with sufficient information to make an informed decision whether to accept the Commonwealth's plea or risk proceeding to trial. *See* PCRA Court Opinion, 11/6/2014, at 22.

The Commonwealth also argues, however, that the PCRA court "improperly raised the issue of the Commonwealth offering a plea agreement to [Hernandez] that was conditioned upon her mother also pleading guilty." Commonwealth's Brief at 24. Rather, it contends "[t]he entirety of [Hernandez's] argument was that counsel induced her to plead guilty by telling her she would receive a life sentence if she went to trial and that she felt pressured by counsel to enter the plea." *Id.*

We disagree with the Commonwealth's assertion that the PCRA court improperly raised this issue *sua sponte*. While this specific claim was not included in the amended PCRA petition, Hernandez explicitly stated, in her original, *pro se* petition that counsel provided ineffective assistance by "intimidating [her into pleading guilty] by saying that [her] mother can only get her plea bargain if [Hernandez] take[s] one." Motion for Post Conviction Collateral Relief, 8/24/2011, at 3. Accordingly, we find it was an appropriate basis upon which the PCRA court could grant relief.

We emphasize that although the fact that Hernandez's plea was contingent upon her mother's plea was outlined in the written offer provided by the Commonwealth, the written offer did not specify the sentence her mother would receive under the plea agreement. **See** Plea Offer, 10/28/2009, at 2. More concerning, however, is the fact that the contingent nature of the plea – particularly the fact that Hernandez's mother would **benefit** from a county sentence if Hernandez entered a guilty plea - was not detailed in the written colloquy or explained to Hernandez during the oral colloquy. Rather, the written colloquy simply referenced the plea offer to Hernandez, and the oral colloquy referenced only the agreement that Hernandez would "receive an overall sentence of thirty-nine and one-half years to seventy-nine years in prison." N.T., 11/23/2009, at 8. **See also** Guilty Plea Colloquy, 11/4/2009, at 6.

Here, the PCRA court was justifiably concerned that Hernandez's plea was connected to her mother's plea. The court opined:

> [T]he case before us presents a unique situation … [Hernandez] was a sixteen-year-old girl who had lived her entire life with her mother and had very limited involvement with her father. She knew that her mother's chance of getting a plea agreement for a local sentence was entirely dependent upon her entering a plea of guilt under the terms offered to her by the Commonwealth and that no different offer would be extended. [Hernandez] indicated to [plea counsel] that her mother was "100 per cent" behind her entering a guilty plea.
>
> Although [Hernandez] was by no means an innocent sixteen-year-old girl, having a juvenile record and having committed "the most adult type crime that you can do," and the fact that her mother had not been an ideal role model, we cannot help but find that [Hernandez's] decision to forego trial

- 17 -

and plead guilty was compromised by her desire to protect her mother to the point of coercion. Such psychological and emotional pressure could certainly be expected to overshadow her ability to make a conscious choice of the best option for her own welfare. We cannot help but feel that her ability to consider what was in her own best interest was clouded by her youth and devotion and that she should have been able to make such a momentous decision without shouldering responsibility for her mother's welfare.

PCRA Court Opinion, 11/6/2014, at 28-29 (record citation omitted).

The fact remains that this issue was not fully explored by either plea counsel or the trial court before Hernandez entered her guilty plea. Counsel testified, at the PCRA hearing, that Hernandez stated her mother was "behind her one hundred percent" and Hernandez knew her mother would be "receiving a local jail sentence." N.T., 5/20/2013, at 27, 34. However, Hernandez testified she was not allowed to speak with her mother before she took the plea and was sentenced. *Id.* at 14. It is certainly not clear how much Hernandez knew about her mother's proposed plea offer before she entered her own plea, and whether the contingent aspect of the deal placed undue pressure on her to spare her mother significant jail time.

We recognize that a defendant may enter a guilty plea for any number of reasons, including to "shield others" from prosecution or lengthy sentences. *Commonwealth v. Yager*, 441, 685 A.2d 1000, 1006 (Pa. Super. 1996) (*en banc*) (citation omitted), *appeal denied*, 701 A.2d 577 (Pa. 1997). However, when that defendant is a juvenile, charged with the most serious crime, and her decision to enter a guilty plea may be based, in part on her desire to protect her mother from a lengthy prison term, we

agree great care must be taken to ensure the plea is entered knowingly and voluntarily. This is especially true where, as here, her mother was also her co-defendant, whom she was not permitted to consult before making this momentous decision.[12]

Therefore, under the unique facts of the case before us, we find the PCRA court did not err or abuse its discretion in concluding plea counsel provided ineffective assistance, which resulted in an unknowing and involuntary plea.[13] Accordingly, we affirm the order of the PCRA court granting relief and remand for proceedings consistent with this memorandum.

_____

[12] We recognize there is not requirement that a juvenile, charged as an adult, be permitted to speak with a parent prior to entering a guilty plea. So long as the juvenile is represented by "conscientious counsel," her rights have been protected. **Shaffer**, **supra**, 449 A/2d at 681. Nevertheless, when, as here, there is a question as to whether counsel acted in the juvenile's best interest, the fact that Hernandez was not permitted to speak with her mother, the most important adult figure in her life, before having to decide whether to accept the plea, is significant. Moreover, the only other interested adult who provided advice, Hernandez's absent father, urged her to reject the plea.

[13] We emphasize the judge who presided over Hernandez's PCRA proceedings also presided over her guilty plea.

J-S53021-15

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/15/2015

- 20 -