569 P.2d 1341

**The STATE of Arizona, Appellee,**

v.

**Leonard Ray GARNER, Appellant.**

**No. 3883.**

Supreme Court of Arizona,
In Banc.

Sept. 20, 1977.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III and Teresa S. Thayer, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Edmund T. Allen, III, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Chief Justice.

This is an appeal by the defendant, Leonard Ray Garner, from a judgment of guilt following a jury trial on a charge of child molesting, A.R.S. § 13–653. The defendant was sentenced to the Arizona State Prison for a period of not less than three nor more than eight years.

These questions are presented:

1. Was it error for the trial court to permit defendant's adopted son to testify?

2. Did the trial court err in permitting evidence of defendant's prior bad acts?

3. Was the defendant denied a fair trial as a result of the prosecutor's reference to a peace bond?

4. Did the trial court properly instruct the jury as to character evidence?

On the evening of 18 October 1975, the defendant's wife went to play bingo with some friends. The defendant remained at home with their two daughters and their adopted son. The son, who was nine when the incident occurred, testified on direct examination that he watched television

with his father and his two sisters until his father told him to take a shower and go to bed. The son told the court that after his shower he went to bed and fell asleep but that he was awakened when his father came into his bedroom, pulled down his pants and committed fellatio[1] on him. He testified that when he awoke his pants had already been pulled down and that the defendant told him to hold still. He further testified that the defendant stopped at one point when a car approached, apparently fearing that his wife might be returning, but that when the car passed he resumed the alleged act.

Prior to trial, the defendant sought to preclude the prosecution from introducing evidence of any prior alleged acts of sexual misconduct by the defendant with his adopted son. A hearing was held and testimony as to such acts was presented to the court. Following that hearing the court ruled that the prosecution could present evidence of two prior acts both relating to oral sex; one in 1971 wherein the defendant allegedly encouraged his son to commit oral sex on him and another in 1974 in which it was alleged that the defendant committed an act of oral sex on his son.

At trial, in reference to the 1974 incident, the county attorney asked the son if the defendant had ever committed a similar act on him before. The son responded that he "didn't know." The county attorney then asked him if the defendant had ever made him perform an act of oral sex on the defendant. The son responded that he had, testifying further that he and the defendant had been taking a shower together and that when they finished the defendant made him perform the alleged act. He could not remember the date of this incident, but he testified that it occurred when he was in the first or second grade.

The son was extensively cross-examined by counsel for the defendant who sought to impeach the son's testimony with certain prior inconsistent statements. The reporter's transcript indicates that the son was not the best nor the most consistent witness. However, as to the critical aspects of the crime as charged and the prior relationship, his testimony was certain even if not clear as to the exact time the events occurred.

The jury returned a verdict of guilty on 14 May 1976, and this appeal followed.

## COMPETENCY TO TESTIFY

Defendant asserts that the trial court erred in permitting the son to testify. Prior to trial, defendant moved to have the son psychiatrically examined in order to determine his competency to testify. Noting certain inconsistencies between the son's statements to the police and his testimony at the preliminary hearing, the trial court granted defendant's motion and ordered that the son be examined by Dr. Howard Gray and Dr. Frank Chilese. Both doctors examined the son and forwarded their reports to the court. Based on a review of these reports and upon his own observations of the son's testimony at certain pretrial proceedings, the trial court ruled that the son was competent to testify. The court also asked the jury during voir dire:

"Let me ask you this: Do all of you recognize that a person's age and/or a person's employment should have no bearing to you as to their ability to come before you as a witness?"

Defendant contends this question was improper and that the son should not have been allowed to testify. In support of his position, defendant cites A.R.S. § 12–2202 and A.R.S. § 13–1801 which make the standard set forth in A.R.S. § 12–2202 applicable in criminal actions as well. The pertinent language of A.R.S. § 12–2202 provides as follows:

---

1. Throughout his testimony, the son described what occurred rather than using the technical name for the act in question. When ques-tioned, he responded that he did not know the meaning of such terms; they are used here for the sake of brevity.

**446**

"The following shall not be witnesses in a civil action:

\*    \*    \*    \*    \*    \*

"2. Children under 10 years of age who appear incapable of receiving just impressions of the facts respecting which they are to testify, or of relating them truly."

■ The competency of a child to testify relates to the time when the child is produced as witness, not to the time when the events occurred. *Litzkuhn v. Clark*, 85 Ariz. 355, 339 P.2d 389 (1959). Here, the son, who was ten when he testified, had, prior to trial, reached the presumptive age of competency as established by the statute. This being the case, it was within the discretion of the trial judge to determine if the son was qualified to testify. The court's decision will not be reversed on appeal unless there is a clear abuse of discretion. *State v. Parker*, 106 Ariz. 54, 470 P.2d 461 (1970); *State v. Berry*, 101 Ariz. 310, 419 P.2d 337 (1966); *State v. Dominguez*, 87 Ariz. 149, 348 P.2d 919 (1960); *Keefe v. State*, 50 Ariz. 293, 72 P.2d 425 (1937).

■ As for the inconsistencies in the son's testimony and his inability to place the events in question into a specific time frame, there was evidence indicating that the son was somewhat below average intelligence for a boy of his age. In *State v. Berry*, supra, also a prosecution for child molesting, defendant, relying on similar inconsistencies, asserted that there was a fatal variance between the information and the subsequent evidence presented at trial. In resolving that issue we said:

"The fact that the victim seemed somewhat unsure of the time of the assault might be considered by the jury as going to the credibility of her testimony, but we find that it is insufficient grounds for declaring a fatal variance.    \*    \*    \* That a jury might not pay much heed to counsel's vigorous attempts to extract an inconsistency in the witnesses' testimony by the use of such calendar dates with which she admittedly had no working

knowledge does not seem unreasonable. If we were to find a fatal variance under such circumstances it would seem to behoove one who chooses to sexually assault children at the risk of irreparable psychological and physical damage to his victim, to make sure that the child is sufficiently young to be incapable of effectively testifying as to specific dates in the year and minutes on the clock. We recognize, rather, that it is for the jury to determine the truth of the witnesses' story, and that it is not the function of this court to retry that issue." *State v. Berry*, supra, 101 Ariz. at 314, 419 P.2d at 341.

■ We find no error in allowing the son to testify. Neither do we find the trial court's statement during voir dire erroneous. It was, in fact, an accurate statement of the law. The jury may, of course, weigh the testimony of any witness no matter how young or old. There is no arbitrary age limit under which the testimony of a child is rejected. Even under A.R.S. § 12–2202 children under the age of 10 must also be shown to be "incapable of just impressions of facts respecting" their testimony before they are excluded as witnesses. The test is whether the witness is capable of accurately perceiving the facts and relating them to the jury. Competency of a child to testify is determined not by age, but by the degree of his understanding and knowledge. *Litzkuhn v. Clark*, supra.

## PRIOR BAD ACTS

■ Defendant next contends that the trial court erred in denying his motion in limine and in permitting the introduction of the 1971 and 1974 prior bad acts.

In *State v. McFarlin*, 110 Ariz. 225, 517 P.2d 87 (1973), we discussed the emotional propensity exception and its application by this court in previous cases at length. In the course of that discussion, we noted that the exception had been "extended to questionable lengths" and that its application to all sex cases had been sharply criticized. We nonetheless concluded that

"[i]n those instances in which the offense charged involves the element of abnormal sex acts such as sodomy, child molesting, lewd and lascivious, etc., there is sufficient basis to accept proof of similar acts near in time to the offense charged as evidence of the accused's propensity to commit such perverted acts." 110 Ariz. at 228, 517 P.2d at 90.

The test laid down in *McFarlin,* supra (sexual aberration, similarity and nearness in time), was essentially a relevancy test designed to admit those acts probative of the crime charged and exclude those acts that are not sufficiently relevant. We explained the reasoning behind the admission of such evidence as follows:

"The rationale in the exclusionary rule concerning evidence of other bad acts or crimes is the prejudice to the accused and the questionable relevancy of such evidence to the offense charged. The exceptions to the exclusionary rule are generally based on the strong relevancy of the evidence offered even though prejudicial to the defendant. II Wigmore on Evidence, 3rd Ed. § 216." *State v. McFarlin,* supra, 110 Ariz. at 228, 517 P.2d at 90.

More recently in *State v. Treadaway,* 116 Ariz. 163, 568 P.2d 1061 (filed July 11, 1977), in a prosecution for the sodomy-murder of a six year old boy, we held that, absent expert testimony showing a continuing emotional propensity to commit such acts, the admission of evidence that three years prior to the crime charged the defendant undressed and committed fellatio and anilingus on a thirteen year old boy constituted reversible error. In that case the prior act in question was committed against a person other than the victim of the crime charged and was dissimilar from the crime charged and remote in time. On those facts and in the absence of expert testimony, we held that the prior act was not sufficiently relevant to allow its admission.

The facts of this case raise a different question than that presented by either *McFarlin,* supra, or *Treadaway,* supra. The issue presented here is the admissibility in a prosecution involving abnormal sex, specifically child molesting, of a prior similar act, committed by the defendant upon the same victim.

In *State v. Van Winkle,* 106 Ariz. 481, 478 P.2d 105 (1970), the defendant was convicted of five counts of rape and one count of lewd and lascivious acts all committed upon his fourteen year old daughter. The victim was allowed to testify that she had been molested over a period of "several years" and an older sister testified to similar acts continuing over a ten year period. This evidence was admitted as showing a system, plan or scheme. In *State v. Finley,* where the defendant stepfather was charged with raping and molesting his adopted fourteen year old daughter, we sustained the admission of certain prior acts, including the victim's testimony that the defendant first molested her five years prior to the crime charged, as showing a "system, plan or scheme to engage in sexual aberrations." (108 Ariz. 420, 421, 501 P.2d 4, 5 [1972]).

In a case involving a sex offense committed against a child, evidence of a prior similar sex offense committed against the same child is admissible to show the defendant's lewd disposition or unnatural attitude toward the particular victim. The California Supreme Court has stated that we believe to be the correct rule:

"While it is true that evidence of other crimes is generally inadmissible (citation omitted), there are a number of exceptions to the rule. Thus, evidence of other offenses is admissible if material to the proof of the crime charged (citation omitted), to show motive, intent or knowledge (citation omitted), and to show a common plan or scheme (citation omitted). In cases involving sex crimes, evidence of other not too remote sex offenses with the prosecuting witness is admissible to show a lewd disposition or the intent of the defendant towards the prosecuting witness." *People v. Sylvia,* 54 Cal.2d 115, 119–20, 4 Cal.Rptr. 509, 513, 351 P.2d 781, 785 (1960).

See also McCormick On Evidence, § 190 (2d ed. 1972); Udall, Arizona Law of Evidence, § 115 (1960); *People v. Brown,* 14 Cal. App.3d 334, 92 Cal.Rptr. 370 (1971), (prosecution for six separate sex offenses committed against defendant's twelve year old stepdaughter, prior acts admissible to show defendant's lewd disposition toward the victim); *People v. Elliston,* 181 Colo. 118, 508 P.2d 379 (1973), (prosecution for unnatural carnal copulation and statutory rape of a ten year old girl, admission of prior acts with the victim not error); *Godfrey v. People,* 168 Colo. 299, 451 P.2d 291 (1969), (prosecution for indecent and improper liberties with a fourteen year old boy, prior acts against same child held admissible); *Hood v. People,* 130 Colo. 531, 277 P.2d 223 (1954), (prosecution for indecent liberties with a female child under age sixteen, prior acts with complaining witness admissible).

Here, the prior incident, committed against the same victim, was material to the crime charged. We find no error.

## PROSECUTOR'S REFERENCE TO A PEACE BOND

■ During the direct examination of defendant's wife, the following exchange occurred:

"Q [By the County Attorney] ———, at about the time these proceedings were started, the criminal proceedings involving this charge, did you initiate any other criminal proceedings against Leonard?

"A Just the divorce.

"Q All right, but I was thinking specifically of a peace bond.

"A Yes."

Immediately following the witness's response, defendant's counsel asked to approach the bench. A conference was held at the bench at which time defense counsel moved for a mistrial on the basis of this question. The trial court denied the motion and asked the defendant's counsel if he wanted a cautionary instruction at that point. After further discussion, the following instruction was agreed to by defendant's counsel and given by the court:

"THE COURT: The questions posed to the witness immediately preceding the Court's conference with counsel at the bench were objected to as being not relevant to these proceedings. The Court has sustained that objection. And in that regard, the jury is specifically admonished to disregard the questions that were posed and the response given to those questions: And furthermore, you are also specifically admonished not to consider in any fashion any response that was made to those questions."

On appeal defendant asserts that the county attorney's question improperly injected evidence of other criminal proceedings pending against the defendant. He argues that the remark created an impression in the minds of the jury that defendant was a bad man and as such constituted reversible error. We do not agree.

We believe the trial court handled the matter correctly. The mention of a peace bond was improper but it was not prejudicial. The existence of a peace bond is not necessarily evidence of any prior criminal act. It does not appear, particularly in light of the court's admonishment to the jury, that it was prejudicial to the defendant. *State v. Finn,* 111 Ariz. 271, 528 P.2d 615 (1974). We find no error.

## JURY INSTRUCTION ON CHARACTER EVIDENCE

■ Finally, the defendant contends that the trial court incorrectly instructed the jury on the issue of good character evidence. At trial defendant objected to the instruction given and offered his own instruction which was rejected. The instruction given by the court was the Recommended Arizona Jury Instruction (R.A.J.I.) on this issue, R.A.J.I. Criminal Standard 11. It provides as follows:

"The defendant has introduced evidence of his good reputation in the community.

"Consider the evidence of good reputation together with all the other evidence. If you are convinced beyond a reasonable doubt that the defendant is guilty of the crime charged, you must not use evidence of good reputation as an excuse to acquit the defendant."

Defendant argues that this instruction is confusing and does not properly state the law. This contention is without merit. In *State v. Childs*, 113 Ariz. 318, 553 P.2d 1192 (1976), the identical R.A.J.I. instruction was given. We held that the instruction correctly states the law, clearly indicating to the jury that it is to consider the evidence of good character along with all other evidence in the case. Defendant raises no new objection here and our resolution of this issue in *Childs,* supra, is controlling. We find no error.

The judgment of guilt and sentence are affirmed.

STRUCKMEYER, V. C. J., and HAYS and GORDON, JJ., concur.

HOLOHAN, J., concurs in the result.