129 Ariz. 371 (1981)
631 P.2d 526
In the Matter of the Appeal in PIMA COUNTY, JUVENILE ACTION, NO. 63212-2.
No. 15151-PR.
Supreme Court of Arizona, In Banc.
July 9, 1981.
*372 Cahan & Hillary by Eric Cahan, Tucson, for appellant.
Stephen D. Neely, Pima County Atty., David Quantz, Deputy County Atty., Tucson, for appellee.
GORDON, Justice:
In a petition filed November 9, 1979, the juvenile in this case was charged with having sexually abused another minor in violation of A.R.S. §§ 13-1404, 13-701, and 13-703. After an evidentiary hearing before a juvenile court referee on February 8 and 15, 1980, pursuant to A.R.S. § 8-231, the referee made a finding "that it has not been proved beyond a reasonable doubt that the offense was committed."
The state filed a timely appeal pursuant to A.R.S. §§ 8-231.01 and 8-231.02. On April 1, 1980, following a review of the record, including a transcript of the evidentiary hearing pursuant to A.R.S. § 8-231.02(A), Juvenile Judge Lillian Fisher reversed the referee's factual determination and found "beyond a reasonable doubt that the minor committed the acts as alleged in the petition." Judge Fisher thereupon adjudicated the juvenile to be a delinquent minor.
The Court of Appeals, 129 Ariz. 383, 631 P.2d 538, reversed and remanded, agreeing with the juvenile "that his adjudication as a delinquent minor was the result of a violation of his constitutional right to due process, because the court made its determination on the basis of a `cold' transcript, rejecting the recommendation of a juvenile court referee who had heard the testimony."
We accepted the state's petition for review pursuant to A.R.S. § 12-120.24 and Rule 28, 17A A.R.S., Juvenile Court Rules of Procedure. The opinion of the Court of Appeals is vacated. The order of the Juvenile Court adjudging the juvenile in this case to be a delinquent minor is reversed. The case is remanded to the Juvenile Court for proceedings not inconsistent with this opinion.
A.R.S. § 8-231 provides that juvenile judges can direct that hearings be conducted at the first instance by referees, who then transmit written findings and recommendations for disposition to the judge of the juvenile court. A.R.S. § 8-231.01 grants any party to a juvenile hearing the right to appeal from the recommendation of the referee. If a transcript was prepared of the proceedings before the referee, A.R.S. § 8-231.02(A) states that the appeal "shall be on the record of the proceedings." Trial de novo is to be granted if no transcript of proceedings was maintained or if the juvenile judge so orders after an evaluation of the sufficiency and condition of the record. Finally, A.R.S. § 8-231.02(B) directs that "[a]fter trial de novo or a review of the record, the juvenile judge shall enter a final order of the juvenile court."
The juvenile in this case was adjudicated to be a delinquent under the above process on the basis of a transcript of the proceedings before a referee contrary to that referee's finding that the juvenile had not committed a delinquent act. The record before us indicates that a factual finding as to whether the alleged delinquent act actually occurred depends heavily on an assessment of the credibility of two witnesses at the hearing before the referee: the juvenile *373 and the alleged victim, also a minor. The referee, after having personally heard the witnesses testify and having observed their demeanor while on the witness stand, found that the state had not fulfilled its burden of proving beyond a reasonable doubt that a delinquent act had been committed. Yet the juvenile judge, without having observed the witnesses testify and without giving reasons therefor, reversed the referee's factual finding on the basis of the transcript and adjudged the juvenile to be a delinquent.
The juvenile claims that this procedure violates "basic due process and fundamental fairness * * * because of Judge Fisher's failure to hear the evidence as fact finder before her adjudication of guilt was made."
As the Court of Appeals noted, the Supreme Court of the United States came close to answering this argument in United States v. Raddatz, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), which addressed an analogous procedure in the federal court system. In that case, pursuant to the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), a district court judge referred a motion to suppress an involuntary confession to a federal magistrate, who conducted an evidentiary hearing and made proposed findings of fact and recommendations for disposition. Without conducting a hearing on its own to personally hear certain controverted testimony, the district court accepted the recommendation of the magistrate and denied the motion to suppress. The Supreme Court held that the district court's acceptance of the magistrate's findings on contested credibility issues without personally hearing the live testimony was consistent with the Due Process Clause of the Fifth Amendment of the United States Constitution.
An analysis of the reasoning in Raddatz persuades us that that Court would come to a different conclusion on the facts of this case where the juvenile judge rejected the referee's finding as to the ultimate question whether a delinquent act was committed.
Initially noting that Mullane v. Central Hanover Bank & Trust Co. held that the guarantees of due process call for a "hearing appropriate to the nature of the case," 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950), the Raddatz Court articulated two tests to evaluate the sufficiency of due process in the procedure before it. The first was "whether the nature of the issues presented and the interests implicated * * require that the * * * judge must actually hear the challenged testimony." 447 U.S. at 677, 100 S.Ct. at 2413, 65 L.Ed.2d at 434. We think there are important differences between the issues presented and the interests implicated at a hearing on a motion to suppress a confession as involuntary on the one hand, and a hearing to determine whether a juvenile committed a delinquent act on the other.
With regard to the nature of the issues presented, the Court in Raddatz pointed out that the purpose of the motion to suppress decided by the magistrate was to decide the voluntariness of a confession, not the ultimate question of the guilt or innocence of the defendant. In comparison, the precise purpose of the hearing in the case before us was to decide the ultimate question whether the juvenile had violated a criminal statute. See A.R.S. § 8-201(7) and (8). The referee's finding was "that it ha[d] not been proved beyond a reasonable doubt that the offense was committed."
Turning to the interests implicated in the two procedures, we note that the Supreme Court has stated that "[a] proceeding where the issue is whether the child will be found to be `delinquent' and subjected to the loss of his liberty * * * is comparable in seriousness to a felony prosecution." In re Gault, 387 U.S. 1, 36, 87 S.Ct. 1428, 1448, 18 L.Ed.2d 527, 551 (1967). We believe the interests implicated in an evidentiary hearing to adjudicate the delinquency of a juvenile are deserving of more protection than those implicated in an evidentiary hearing on a motion to suppress an involuntary confession. This is reflected by the fact that while an adjudication of delinquency requires proof beyond a reasonable doubt, In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), a preponderance of the *374 evidence is sufficient to prove a confession voluntary. Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).
The second test which the Court mentioned in Raddatz was a three-prong test from Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), which focused on the following factors in deciding whether an administrative procedure was constitutionally sufficient: (1) the private interest affected by the procedure, (2) the risk of an erroneous deprivation of that interest through the procedure and the probable value of other procedural safeguards and (3) the Government's interest. 424 U.S. at 334-35, 96 S.Ct. at 903, 47 L.Ed.2d at 33. As Justice Marshall pointed out in his dissent to Raddatz, the majority opinion seemed not to apply the Mathews test in analyzing the constitutional sufficiency of the procedure before it. A recent Fifth Circuit opinion, however, used this three-prong standard to distinguish a situation similar to the one at bar from Raddatz. Louis v. Blackburn, 630 F.2d 1105 (5th Cir.1980).
In Louis, the Fifth Circuit held that a district court in a procedural posture similar to that in Raddatz which rejected instead of accepting the credibility determinations of the magistrate violated due process unless the district court judge first heard the disputed testimony and observed the witnesses himself.
In reversing the district court, the Court noted that in the case before it, the first and third factors of the Mathews test were identical to those in Raddatz. With regard to the second factor, the Fifth Circuit stated that an additional hearing before the district court judge "would do little, if anything, to further protect the defendant's interests" where the judge agreed with the magistrate's credibility findings. On the other hand, the Court felt that where a district court rejects a magistrate's credibility determinations, "[a]nother hearing would significantly increase the protection of the rights of the petitioner. If the district judge doubts the credibility determination of the magistrate, only by hearing the testimony himself does he have an adequate basis on which to base his decision." 630 F.2d at 1110.
This distinction between acceptance and rejection of a magistrate's findings is in harmony with an observation made by the Supreme Court in a footnote to the Raddatz opinion:
"7. Neither the statute nor its legislative history reveals any specific consideration of the situation where a district judge after reviewing the record in the process of making a de novo `determination' has doubts concerning the credibility findings of the magistrate. The issue is not before us, but we assume it is unlikely that a district judge would reject a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal; to do so without seeing and hearing the witness or witnesses whose credibility is in question could well give rise to serious questions which we do not reach."
447 U.S. at 681, 100 S.Ct. at 2415, 65 L.Ed.2d at 436.
The Supreme Court concluded in Raddatz "that the process due at a suppression hearing may be less demanding and elaborate than the protections accorded the defendant at the trial itself." 447 U.S. at 679, 100 S.Ct. at 2414, 65 L.Ed.2d at 435. The same may be said of a juvenile delinquency hearing, as the Fourteenth Amendment of the United States Constitution does not require that such a hearing conform with all the requirements of a criminal trial. Winship, supra. However, Gault, supra, established that the Fourteenth Amendment does require application of the essentials of due process and fair treatment during a hearing adjudicating delinquency.
In determining which essentials of due process and fair treatment are required in delinquency adjudications, the emphasis is on encouraging accurate fact-finding. McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). As the Supreme Court observed in Speiser v. Randall, 357 U.S. 513, 520, 78 S.Ct. 1332, 1339, 2 L.Ed.2d 1460, 1469 (1958), "[t]o experienced *375 lawyers it is commonplace that the outcome of a lawsuit  and hence the vindication of legal rights  depends more often on how the fact-finder appraises the facts than on a disputed construction of a statute or interpretation of a line of precedents." The deference which appellate courts accord the trier of fact, whether judge or jury, to make determinations based on assessments of the credibility of witnesses is elementary. See, e.g., Builders Supply Corp. v. Shipley, 86 Ariz. 153, 341 P.2d 940 (1959); Gillespie Land & Irrigation Co. v. Jones, 63 Ariz. 535, 164 P.2d 456 (1945). As the Fifth Circuit observed in Louis, supra, "One of the most important principles in our judicial system is the deference given to the finder of fact who hears the live testimony of witnesses because of his opportunity to judge the credibility of those witnesses." 630 F.2d at 1109. We believe that personal observation of witnesses is crucial to accurate fact-finding when the outcome of a juvenile delinquency adjudication depends on an assessment of the credibility of the witnesses.
Accordingly, we hold that the reversal by Judge Fisher of the referee's factual finding that the juvenile in this case had not committed a delinquent act violated the Due Process Clause of the Fourteenth Amendment of the United States Constitution because, in reversing that finding, Judge Fisher necessarily rejected the referee's credibility assessments without having personally heard the disputed testimony and without giving valid reasons to support such a rejection.[1]
Judge Fisher stated in the minute entry containing the delinquency adjudication that she was "persuaded in this matter by" Swisher v. Brady, 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978). Swisher rejected a double jeopardy challenge to a juvenile delinquency adjudication procedure analogous to ours. As Justice Marshall pointed out in his dissent, however, the majority opinion did not address the due process problems inherent in such a procedure. Justice Marshall explained,
"As the majority accurately states, the only issue raised in the complaints or focused upon in the parties' briefs was that of double jeopardy. It is argued by amicus, however, that the Maryland system * * * violates the Due Process Clause by permitting ultimate factfinding by a judge who did not actually conduct the trial. The Court does not reach this issue, apparently believing that it is not properly presented here."
438 U.S. at 229, 98 S.Ct. at 2713, 57 L.Ed.2d at 723-24.
We therefore reverse the order of the juvenile court adjudicating the minor in this case to be delinquent and remand for proceedings not inconsistent with this opinion. The opinion of the Court of Appeals is vacated.
STRUCKMEYER, C.J., HOLOHAN, V.C.J., and HAYS and CAMERON, JJ., concur.
NOTES
[1] We do not address an analogous procedure for appeal of criminal actions from justice or police court to superior court prescribed in A.R.S. § 22-374, except to note that in that situation only the defendant has the right to appeal. A.R.S. § 22-371.