981 P.2d 575

STATE of Arizona, Appellee,

v.

Jesse Aurelio URIARTE, Appellant.

No. 1 CA–CR 97–0351.

Court of Appeals of Arizona,
Division 1, Department B.

Aug. 27, 1998.

Review Denied March 23, 1999.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, R. Wayne Ford, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Anna M. Unterberger, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

EHRLICH, Judge.

¶ 1 Jesse Aurelio Uriarte ("defendant") appeals his convictions and sentences for two counts of child molestation and one count of sexual conduct with a minor, class 2 felonies and dangerous crimes against children in the first degree. We affirm two of the convictions and sentences; we reverse the third conviction and remand that count for a new trial. In so deciding, we hold that a victim who is a minor has a right to a parent's presence at trial, even if the parent is to testify and the rule excluding witnesses has been invoked. We hold also that a period of community supervision following a term of prison is not a part of the length of a sentence which must be counted in determining the number of jurors.

### FACTUAL [1] AND PROCEDURAL BACKGROUND

¶ 2 The defendant was indicted on three counts of child molestation, two counts of

---

1. We view the facts underlying the defendant's convictions in the light most favorable to sustaining the verdicts. *State v. Atwood*, 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), *cert. denied*, 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993). We use only the initials of the victim and her mother to protect the child's privacy.

sexual conduct with a minor and one count of public sexual indecency, each count involving his sister-in-law, R.J., who was 12-years-old during the summer of 1994 when the behavior occurred. The acts took place at the home of the defendant and his wife, who is R.J.'s sister, Toni Uriarte.

¶ 3   There were four occasions alleged. The first incident occurred when the defendant inserted his finger inside R.J.'s vagina (Count I).

¶ 4   During the second episode, the defendant got into bed with R.J., penetrated her vagina digitally (Count II), then attempted intercourse by inserting his penis inside her vagina (Count IV). Next, he placed R.J.'s hand on his penis and had her masturbate him (Count III). Toni later discovered the defendant and R.J. together in bed.

¶ 5   A third incident took place while R.J. was in the kitchen, when the defendant approached her from behind and digitally penetrated her vagina (Count V). Toni also was in the kitchen.

¶ 6   On the fourth occasion, the defendant masturbated in front of R.J. until he ejaculated (Count VI). He and R.J. were alone in a bedroom.

¶ 7   R.J. disclosed these occurrences to her mother, R.A., about one year later. By that time, R.A. had noticed that R.J. had become increasingly uncomfortable with the defendant and reluctant to go to her sister's house.

¶ 8   The incidents were reported to the police. A detective arranged a "confrontation call" between R.J. and the defendant in an attempt to have the defendant make admissions about his sexual conduct with R.J. In consequence, during the call, the defendant made numerous statements acknowledging prior sexual activity with R.J. Additionally, after he was arrested, the defendant told the detective that R.J. had masturbated him, and he did not deny penetrating R.J. digitally. He also admitted that Toni had discovered him in bed with R.J.

¶ 9   The jury found the defendant guilty on Counts I and III. It was unable to reach a verdict on Count II, and it acquitted him of the remaining counts. Upon retrial, he was found guilty on Count II.

¶ 10   The defendant was sentenced to concurrent, mitigated prison terms of ten years on Counts I and III and to a consecutive, mitigated term of 13 years on Count II. Now on appeal, he raises the following issues:

1.   Whether the rule of exclusion of witnesses was violated when R.A. testified since she had been present during the trial as the mother of the victim;

2.   Whether the trial court erred in permitting R.A. to testify regarding threats made by Toni;

3.   Whether the court committed fundamental error in denying the defendant a twelve-person jury at the second trial;

4.   Whether the court applied an erroneous standard of admissibility to evidence of other acts introduced during the second trial; and

5.   Whether guarantees against double jeopardy were violated when evidence regarding Counts IV, V and VI, of which the defendant was acquitted after the first trial, was introduced during the second trial.

## DISCUSSION

### 1.   The Exclusion of Witnesses

¶ 11   At the commencement of the first trial, the court ordered that prospective witnesses be excluded during the proceedings. On the last day of the trial, the state called R.A. to testify in rebuttal. The defendant objected, arguing that, because R.A. had been in the courtroom for prior testimony, allowing her to testify would violate the court's order barring witnesses. The court overruled the objection, concluding that "the statutes and rules read together are meant to allow the parent of a child to be declared a victim, and exercise all the victim's rights," including the right to be present during trial.

¶ 12   At the second trial, the defendant renewed this objection to R.A.'s testimony. The objection again was overruled.

¶ 13   The defendant contends that permitting R.A. to testify was reversible error. We disagree. R.J., as a victim who is a minor, had a right to her parent's continuing

presence in the courtroom with her, although her mother later would testify.

¶ 14    Section 13–4403(C) of The Victim's Rights Implementation Act, ARIZ.REV.STAT. ANN. ("A.R.S.") section 13–4401 *et seq.* (Supp. 1997), states: "If the victim is a minor the victim's parent ... may exercise all of the victim's rights on behalf of the victim." Those rights include the prerogative "[t]o be present at ... all criminal proceedings where the defendant has the right to be present." ARIZ. CONST. art. 2, § 2.1(A)(3).

¶ 15    The defendant argues that A.R.S. section 13–4403(C) permits a parent to exercise the victim's rights only "on behalf" of the victim, meaning "instead of" and not "in addition to" the victim. Since R.J. was present throughout the trial, he insists that she had no right to R.A.'s presence in the courtroom.

¶ 16    We reject this constricted interpretation. Rather, we accept the standard definition of "behalf" as encompassing "benefit" and "support." *See* BLACK'S LAW DICTIONARY 155 (6th ed.1990); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 198 (1969). This refutes any meaning of the phrase "on behalf of" that would limit a parent's exercise of a minor's rights to situations in which the vic-tim was unable to exercise her rights personally. As would be commonsensical, section 13–4403(C) gives a victim who is a minor the benefit of parental support during proceedings which will be difficult for the child.[2]

¶ 17    This poses a conflict between the Victim's Rights Implementation Act and the Arizona Rules of Court governing the exclusion of witnesses from trial proceedings. While both ARIZ. R.CRIM. P. 9.3(a)[3] and ARIZ. R. EVID. 615[4] exempt a victim from the general rule of exclusion, neither rule relieves the parent of a victim who is a minor to attend proceedings with her child, with the exception, not applicable here, of the parent of a child who is incapacitated or killed by the defendant.[5]

¶ 18    We resolve this conflict by giving effect to the Arizona Constitution as implemented by statute. The Victim's Bill of Rights amended the Constitution to provide that "[t]he legislature, or the people by initiative or referendum, have the authority to enact substantive and procedural laws to define, implement, preserve and protect the rights guaranteed to victims by this section...." ARIZ. CONST. art. 2, section 2.1(D).

---

2.   Additionally, the defendant's interpretation is unsound in the context of section 13–4403, which provides for circumstances in which the victim is "physically or emotionally unable to exercise any right" or is "incompetent ... or otherwise incapable" of appointing a representative to do so. A.R.S. § 13–4403(A), (B).

3.   The rule states:
    a. Witnesses. The court may, and at the request of either party shall, exclude prospective witnesses from the courtroom during opening statements and the testimony of other witnesses. The court shall also direct them not to communicate with each other until all have testified. If the court finds that a party's claim that a person is a prospective witness is not made in good faith, the person shall not be excluded from the courtroom. Once a witness has testified on direct examination and has been made available to all parties for cross-examination, the witness shall be allowed to remain in the courtroom unless the court finds, upon application of a party or witness, that the presence of the witness would be prejudicial to a fair trial. Notwithstanding the foregoing, the victim, as defined in Rule 39a, Rules of Criminal Procedure, shall have the right to be present at all proceedings at which the defendant has such right.

4.   The rule states:
    At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of a party's cause, or (4) a victim of crime, as defined in Rule 39(a), Rules of Criminal Procedure, who wishes to be present during proceedings against the defendant.

5.   Both rules refer to Ariz. R.Crim. P. 39(a), which states:
    *Victim.* As used in this rule, a 'victim' is defined as a person against whom a criminal offense as defined by [A.R.S. section] 13–4401(6) has allegedly been committed, or the spouse, parent, lawful representative, or child of someone killed or incapacitated by the alleged criminal offense, except where the spouse, parent, lawful representative, or child is also the accused.

It is not disputed that The Victim's Rights Implementation Act is a valid exercise of the legislative authority.

The provisions of the Implementation Act (A.R.S. §§ 13–4401 to –4437) are generally in accord with our interpretation of the powers granted in § 2.1(D) of the Arizona Constitution. Aside from the offending provision involved here [regarding law-enforcement officers' right to decline pre-trial interviews], the Implementation Act does just what the legislature is empowered to do under their "authority to define, implement, preserve, and protect the rights guaranteed to victims." For example, the Act specifies the manner in which a victim who is unable to exercise a right may be represented by someone else. *See* A.R.S. § 13–4403. It describes in far more detail than the constitutional provision information to which a victim is entitled, who must provide the information, and when it must be provided. *See, e.g.,* A.R.S. §§ 13–4405 to –4417.

These provisions, and the Implementation Act in general, illustrate the type of power the voting public granted to the legislature by giving it the power "to define, implement, preserve, and protect the rights guaranteed to victims." The people, in their legislative power, enacted a constitutional provision setting forth victims' rights, but they could not hope to do so with the specificity required to address all of the procedural and substantive issues that might accompany the enactment of such a bill.

*State v. Roscoe,* 185 Ariz. 68, 73, 912 P.2d 1297, 1302 (1996).

¶ 19  Because the Constitution, as implemented by lawful statute, and the rules as are pertinent to this case cannot be reconciled, we give effect to the constitutional guarantee. *See State v. Pierce,* 59 Ariz. 411, 414, 129 P.2d 916, 917 (1942) (Procedural court rules will yield in the presence of "a specific constitutional provision affecting the matter."); *see also Miller v. Heller,* 68 Ariz. 352, 357, 206 P.2d 569, 573 (1949) (Other than the federal constitution, the state constitution is supreme.). Thus, a parent is permitted to attend trial proceedings with and on behalf of a victim who is a minor, even if the parent's testimony is required. It was correct to allow R.A. to testify.

### 2. Impeachment of Toni Uriarte

¶ 20  R.A. testified that, on the day before an earlier trial date, Toni, uninvited, had appeared at R.A.'s home and entered. She proceeded to verbally and physically accost R.A., and she informed her: "If my husband spends one day in jail because of you guys, you're going to be dead." Toni, testifying earlier, denied that this confrontation had occurred.

¶ 21  The defendant claims that R.A.'s testimony was improperly admitted by the trial court. He argues that it should have been excluded under ARIZ. R. EVID. ("Rule") 403 [6] because its prejudice outweighed any probative value. He claims, too, that the evidence was inadmissible under Rule 608(b) [7] because the incident was probative of Toni's truthfulness, thus barring the state from offering extrinsic evidence. We find no abuse of discretion in the court's decisions to the contrary. *See State v. Atwood,* 171 Ariz. 576, 634, 832 P.2d 593, 651 (1992) (reviewing evidentiary rulings for clear abuse of discretion), *cert. denied,* 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993). The threat was probative of Toni's bias, and R.A.'s testimony was properly admitted.

■ ¶ 22  With regard to the defendant's Rule 403 argument, the record does not support his conclusion that R.A.'s testimony

---

6.  Rule 403 provides:
    Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice....

7.  Rule 608(b) states:
    Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility ... may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

caused unfair prejudice, meaning an undue tendency to suggest a decision on an improper basis, such as emotion, sympathy or horror. *State v. Schurz*, 176 Ariz. 46, 52, 859 P.2d 156, 162, *cert. denied*, 510 U.S. 1026, 114 S.Ct. 640, 126 L.Ed.2d 598 (1993). Furthermore and contrary to the defendant's argument, the allegation that Toni threatened a witness is at least as probative if not more probative of bias than the inference that, because she was married to the defendant, she was inclined to lie on his behalf.

¶ 23 Additionally, Rule 608(b) neither blocks an inquiry about conduct which is probative of bias nor precludes introduction of extrinsic evidence to prove such conduct. *See State v. Gertz*, 186 Ariz. 38, 42, 918 P.2d 1056, 1060 (App.1995) ("An effort to impeach on a collateral matter differs significantly from an effort to affirmatively prove motive or bias. Rule 608(b) restricts the former; the sixth amendment protects the latter."). The federal counterpart of the rule has been similarly interpreted. *United States v. Abel*, 469 U.S. 45, 51–52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984).

¶ 24 The defendant adds that the trial court fundamentally erred in failing to give the jury a limiting instruction regarding the proper use of R.A.'s testimony, although such an instruction was not requested. He contends that, because the court did not *sua sponte* caution the jury to use R.A.'s testimony only to assess Toni's credibility, the jurors might have thought that Toni threatened her mother at the defendant's request. We find it unlikely that the jury drew the suggested inference. We certainly cannot conclude that this omission, if error, constituted reversible error. *See State v. Detrich*, 188 Ariz. 57, 65, 932 P.2d 1328, 1336, *cert. denied*, 522 U.S. 879, 118 S.Ct. 202, 139 L.Ed.2d 139 (1997).

### 3. Right to a Twelve-person Jury

¶ 25 The defendant maintains that he was denied his right to have a twelve-person jury at his second trial. This right is guaranteed in criminal cases when "a sentence of death or imprisonment for thirty years or more is authorized by law." ARIZ. CONST. art. 2, § 23; A.R.S. § 21–102(A) (1990).

¶ 26 Conceding that there is a statutory maximum term of imprisonment of 27 years for sexual conduct with a minor, A.R.S. § 13–604.01(A), (E) (Supp.1997), the defendant argues that this term is effectively extended by A.R.S. section 13–603(I) (Supp.1997), which obligates the court to impose a consecutive term of community supervision of one day for every seven days of the prison sentence imposed. Because a 46–month term of community supervision would follow a 27–year prison sentence, the defendant claims that he faced imprisonment for more than thirty years.

¶ 27 Although the defendant failed to raise the issue below, the erroneous denial of a twelve-person jury is fundamental error. *State v. Luque*, 171 Ariz. 198, 201, 829 P.2d 1244, 1247 (App.1992). However, we find no error. "Community supervision" is defined in A.R.S. section 13–105(4) (Supp. 1997) to mean:

> that portion of a felony sentence imposed by the court pursuant to § 13–603, subsection I and served in the community after completing a period of imprisonment or served in prison in accordance with § 41–1604.07.

In turn, A.R.S. section 13–603(I) states:

> If a person is convicted of a felony offense and the court sentences the person to a term of imprisonment, the court at the time of sentencing shall impose on the convicted person a term of community supervision. The term of community supervision shall be served consecutively to the actual period of imprisonment if the person signs and agrees to abide by conditions of supervision established by the state department of corrections.

¶ 28 These provisions demonstrate that community supervision is not equivalent to imprisonment. The first sentence of section 13–603(I) makes the contrast clear by specifying that the term of community supervision follows the term of imprisonment. Section 13–105(4) reinforces the distinction, specifying that the term of community supervision may be served "after completing a period of imprisonment."

¶ 29 The defendant emphasizes that the imposition of a term of community supervision also carries the possibility of further imprisonment. First, he argues, the person may remain in prison by declining to abide by conditions of supervision.

> If a prisoner who reaches the prisoner's earned release credit date refuses to sign and agree to abide by the conditions of supervision prior to release on community supervision, the prisoner shall not be released. When the prisoner reaches the sentence expiration date, the prisoner shall be released to begin the term of community supervision. If the prisoner refuses to sign and agree to abide by the conditions of release, the prisoner shall not be released on the sentence expiration date and shall serve the term of community supervision in prison. . . .

A.R.S. § 41–1604.07(E) (Supp.1997).

¶ 30 Second, a prisoner who has been released on community supervision may be reimprisoned for violating the terms of that release. The Arizona Department of Corrections supervises the "offender on community supervision until the period of community supervision expires. The department may bring an offender in violation of the offender's terms and conditions before the board of executive clemency." *Id.* The Board may then impose additional terms and conditions and allow the offender to remain on community supervision, or it may revoke that status and return the offender to prison. A.R.S. § 31–402(C)(5) (1996).

¶ 31 These provisions establish that imprisonment during the term of community supervision is not part of the "sentence of imprisonment" at issue in determining the appropriate number of jurors. The possible sanction falls outside the authority of the judicial branch. Whether a defendant will be returned to prison is a decision committed to two separate executive actors: the Department of Corrections if the prisoner fails to agree to the terms and conditions of community supervision before release or the Board

of Executive Clemency if the offender fails to abide by those terms. Because the sanction is not imposed by the court following a judgment of guilt against a defendant, it is not part of the sentence of imprisonment. *State v. Muldoon,* 159 Ariz. 295, 298, 767 P.2d 16, 19 (1988) ("A sentence is a judicial order requiring a defendant convicted in a criminal case to presently suffer a specified sanction such as incarceration, monetary fine, or both."); *see also* Ariz. R.Crim. P. 26.1(b) ("The term sentence means the pronouncement by the court of the penalty imposed upon the defendant after a judgment of guilty.").

¶ 32 The term of community supervision which may follow a term of imprisonment is not a "sentence of imprisonment . . . authorized by law," and, therefore, it need not be considered in determining whether a defendant is entitled to a twelve-person jury. Because the defendant was not so entitled, there was no error.

### 4. Admission of Evidence of Other Acts

¶ 33 Prior to the second trial, the state gave notice of its intent to introduce evidence of all of the charges in the indictment, including Counts IV, V and VI, the three counts on which the defendant was acquitted, to demonstrate a common scheme or plan, Ariz. R. Evid. 404(b), as well as the defendant's emotional propensity toward sexually-aberrant behavior. *State v. McFarlin,* 110 Ariz. 225, 228, 517 P.2d 87, 90 (1973) (emotional-propensity exception to general rule excluding evidence of prior acts);[8] *see State v. Garner,* 116 Ariz. 443, 447, 569 P.2d 1341, 1345 (1977) (discussing emotional-propensity exception specifically as to evidence of other sexually-aberrant acts committed against the same victim); *State v. Alatorre,* 191 Ariz. 208, 953 P.2d 1261, 262 Ariz. Adv. Rep. 8, 10 (App. 1998) (same).

¶ 34 Prior to admitting the evidence, the trial court said that the state "would only have to show by a preponderance of the evidence that those events took

---

8. Effective December 1, 1997, the legislature amended Ariz. R. Evid. 404 by adding subsection (c): "Character Evidence in Sexual Misconduct Cases," codifying the common-law rule established by the *McFarlin* line of cases. *See* Ariz. R. Evid. 404 cmt. to 1997 amendment (Supp.1997–98).

place" in order for them to be admissible. The defendant argues that the court articulated an improper standard since "to be admissible in a criminal case, the profferer must prove by clear and convincing evidence that the prior bad acts were committed and that the defendant committed the acts," quoting *State v. Terrazas*, 189 Ariz. 580, 582, 944 P.2d 1194, 1196 (1997).

¶ 35 The defendant is correct that the trial court articulated the incorrect standard.[9] Its error was harmless, though, if the evidence would have met the higher standard of clear and convincing, an assessment which this court is permitted to make on review. *State v. Lee*, 189 Ariz. 590, 599, 944 P.2d 1204, 1213 (1997) (assessing on review whether evidence adduced at trial satisfied the clear-and-convincing test); *Terrazas*, 189 Ariz. at 584, 944 P.2d at 1198 (assessing whether evidence admitted under preponderance standard would have been admitted under clear-and-convincing standard); *cf. State v. King*, 158 Ariz. 419, 422–23, 763 P.2d 239, 242–43 (1988) (addressing the clear-and-convincing standard as discussed in *State v. Turrentine*, 152 Ariz. 61, 730 P.2d 238 (App. 1986), but preferring to define "clear and convincing" as "highly probable," citing *State v. Renforth*, 155 Ariz. 385, 386, 746 P.2d 1315, 1316 (App.1987)).

¶ 36 R.J. testified about the incidents charged in Counts IV, V and VI, describing them and identifying her brother-in-law as her assailant. That evidence as it related to Counts IV and V was corroborated but only to some degree by the defendant's admissions, and her testimony pertaining to Count VI was unsupported. Especially when the record reflects that the first jury acquitted the defendant of Counts IV, V and VI, we have substantial doubt whether the trial court would have found that the evidence on those counts met the clear-and-convincing standard. Therefore, we cannot conclude that the court's failure to apply the clear-and-convincing standard was harmless error.

9. The trial court was not alone in its error. *See State v. Terrazas*, 187 Ariz. 387, 930 P.2d 464

### 5. Double-jeopardy

¶ 37 The defendant argues that the trial court violated his federal and state guarantees against double jeopardy when it admitted evidence at his second trial relating to the counts of which he was acquitted at the first proceeding. *See* U.S. CONST. amend. V, XIV; ARIZ. CONST. art. 2, § 10. In light of our resolution above, we need not address this issue. We do point out, however, that, on the federal foundation, this claim is resolved against the defendant by *Dowling v. United States*, 493 U.S. 342, 349, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), in which the United States Supreme Court held that an acquittal in a criminal case did not preclude evidence admitted in that trial from being introduced in a subsequent trial. Because the double-jeopardy provision of the Arizona Constitution is construed consistently with its federal analogue, *see Quinton v. Superior Court*, 168 Ariz. 545, 550, 815 P.2d 914, 919 (App.1991), *cert. denied*, 503 U.S. 920, 112 S.Ct. 1295, 117 L.Ed.2d 518 (1992), the *Dowling* analysis arguably would be dispositive of the defendant's state constitutional claim as well. However, the Arizona Supreme Court has considered the application of *Dowling* in this context to be an open question. *Terrazas*, 189 Ariz. 580, 584, 944 P.2d 1194, 1198 n. 3 (assuming, without deciding, that Arizona would follow *Dowling*, "it is not inconsistent with the rule we apply in this case, as the earlier acquittal could be based upon the failure of the state to have proved the prior bad acts beyond a reasonable doubt.").

### CONCLUSION

¶ 38 The defendant's convictions and sentences on Counts I and III are affirmed. His conviction on Count II is reversed and this portion of the case remanded for a new trial or such other proceedings as are consistent with this opinion.

NOYES, JR., J., concurs.

(App.1997), and cases cited therein.

GERBER, Judge, concurring and dissenting in part:

¶39 I write separately regarding part four of the majority opinion because I see no way an appellate court can apply a clear and convincing test regarding admission of prior bad acts. Admittedly, *Terrazas* identifies a clear and convincing standard for admission of other act evidence and implicitly authorizes appellate courts to make that determination on review. *See State v. Terrazas*, 189 Ariz. 580, 582, 944 P.2d 1194, 1196 (1997). In both *State v. Lee*, 189 Ariz. 590, 599, 944 P.2d 1204, 1213 (1997), and *Terrazas*, our supreme court now has twice made a clear and convincing finding, albeit in cursory fashion.

¶40 But in neither *Lee* nor *Terrazas* is there any explanation of how an appellate court does such an analysis. Our supreme court has elsewhere defined clear and convincing as evidence that makes the existence of an issue "highly probable." *See State v. King*, 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988). Clear and convincing is also defined as "that ... degree of proof that will produce ... a firm belief or conviction." *King*, 158 Ariz. 419, 423, 763 P.2d 239, 243 (1988) (citing *State v. Turrentine*, 152 Ariz. 61, 68, 730 P.2d 238, 245 (App.1986)). Terms like "convincing," "probable," "firm belief" or "conviction" require an assessment of the persuasiveness of the evidence, i.e., its credibility, a function unique to the trial court. Prior Arizona law acknowledges that "convincing" implies an assessment of credibility: "Since [t]he weight to be given to evidence is peculiarly within the province of the trial court, it is the trial court and not the appellate court which draws a distinction between evidence which is clear and convincing and evidence which merely preponderates." *Webber v. Smith*, 129 Ariz. 495, 498, 632 P.2d 998, 1001 (App. 1981); *see also Premier Financial Services v. Citibank*, 185 Ariz. 80, 85, 912 P.2d 1309, 1314 (App.1995).

¶41 In my view, the clear and convincing standard requires a qualitative as opposed to a quantitative analysis. The latter standard requires a weighing of the quantum of evidence; we do this with regularity in performing sufficiency, substantiality, beyond a reasonable doubt and preponderance mea-

surements. But quality of evidence is a different kind of assessment. When witnesses proffer contradictory testimony, the trier of fact assesses the quality of the testimony by weighing its credibility and assigning greater value to the most credible testimony based on perceptible aspects of witness demeanor. Even in a case where the testimony is uncontradicted, a trier of fact may reject unanimous testimony as unconvincing, which requires distinguishing its credible quality from its quantity. *See Leslie C. v. Maricopa County Juvenile Court*, 256 Ariz. Adv. Rep. 10 (November 25, 1997).

¶42 Here, R.J.'s uncontradicted testimony as to Count VI failed to convince the very jury that observed her demeanor. An appellate court asking whether this evidence satisfies the clear and convincing standard is at a further disadvantage: it must attempt to do so without any observable indicia of credibility. Because of this distance from the witness, appellate courts cannot effectively make this determination from a cold record.

¶43 Repeated cases assert that appellate courts do not sit as thirteenth jurors able to substitute their judgment of credibility for that of the jury. *See State v. Cid*, 181 Ariz. 496, 500, 892 P.2d 216, 220 (App.1995); *State v. Salman*, 182 Ariz. 359, 361, 897 P.2d 661, 663 (App.1994); *State v. Kreps*, 146 Ariz. 446, 450, 706 P.2d 1213, 1217 (1985); *State v. Childs*, 113 Ariz. 318, 321, 553 P.2d 1192, 1195 (1976); *see also State v. Brown*, 125 Ariz. 160, 162, 608 P.2d 299, 301 (1980) (supreme court will not sit as trier of fact and once again balance the evidence adduced at trial).

¶44 Appellate courts grant such deference to the trier of facts because of the latter's proximity to the witnesses. In *Louis v. Blackburn*, 630 F.2d 1105 (5th Cir.1980), the Fifth Circuit observed that "[o]ne of the most important principles in our judicial system is the deference given to the finder of fact who hears the live testimony of witnesses because of his opportunity to judge the credibility of those witnesses." Unlike trial courts, appellate courts do not observe the face to face demeanor of witnesses. *See State v. Gonzales*, 140 Ariz. 349, 354, 681 P.2d 1368, 1373 (1984) (an accused's demean-

or is a vital piece of evidence). Like any other appellate court, this court cannot see witnesses as they testify, hear the tone of their voices or observe their body language. *See Pima County Juvenile Action No. 63212–2,* 129 Ariz. 371, 375, 631 P.2d 526, 530 (1981) ("... personal observation of witnesses is crucial to accurate fact-finding when the outcome ... depends on an assessment of the credibility of the witnesses"). When two witnesses give contradictory evidence, appellate courts with only the cold record to review seem unable to determine which evidence is convincing.[10]

¶ 45 In a libel case involving the clear and convincing standard, the Sixth Circuit divided the facts into subsidiary and ultimate facts and limited its independent judgment to assessing only the latter. *Connaughton v. Harte Hanks Communications, Inc.,* 842 F.2d 825, 841–43 (6th Cir.1988). The court determined that it did not have authority to weigh credibility or choose among inferences already decided by the jury unless they were clearly erroneous. *Id.* at 843. On review, the Supreme Court agreed with this portion of the analysis, stating "credibility determinations are reviewed under the clearly-erroneous standard because the trier of fact has had the 'opportunity to observe the demeanor of the witnesses.'" *Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 688, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989). Concurring in the judgment, Justice Scalia explained this portion of the Court's opinion:

> [Our] analysis adopts the most significant element of the Sixth Circuit's approach, since it accepts the jury's determination of at least the necessarily controverted facts, rather than making an independent resolution of that conflicting testimony.... [T]he Court does not purport to be exercising its own independent judgment as to whether [the jury's factual findings are clear and convincing].

*Id.* at 698, 109 S.Ct. 2678; *see also Hernandez v. New York,* 500 U.S. 352, 364, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (When trial court's findings turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference); *Starkins v. Bateman,* 150 Ariz. 537, 543, 724 P.2d 1206, 1212 (App.1986) (appellate court not effectively equipped to determine whether underlying facts supporting the verdict were established by clear and convincing evidence).

¶ 46 Because the clear and convincing analysis appears to me to be a credibility assessment exclusively within the province of the trial court, I see no way to do this determination on appeal. I thus concur in the result but dissent regarding our court's ability to do the clear and convincing analysis seemingly employed by the majority.

---

**10.** "[T]he law has developed three mechanisms to assist the trier in deciding what witnesses to believe. One is to permit the trier to use the demeanor of a witness as an aid in judging both ability to perceive and remember and willingness to tell the truth.... Shifty eyes, sweaty palms, halting answers, and general appearance of marginal competence are perceivable in person, but not capable of being captured in a printed record. This is major reason for the deference given on appeal to the factual determinations made at trial." Morris K. Udall, Joseph M. Livermore, Patricia G. Escher, Grace McIlvain, *Law of Evidence* § 41, at 66 (volume one 2d ed.1987).